STATE OF NORTH CAROLINA v. CHARLES WESLEY ROACHE

No. 522A01

(Filed 7 May 2004)

## 1. Homicide— first-degree murder—short-form indictment—constitutionality

A short-form murder indictment is sufficient to charge a defendant with first-degree murder under both the United States and the North Carolina Constitutions without the inclusion of aggravating circumstances.

## 2. Jury— capital trial—excusal for cause—inability to recommend death penalty

The trial court did not abuse its discretion in a multiple murder prosecution by excusing two prospective jurors for cause, because both prospective jurors demonstrated their inability to render a verdict in accordance with the laws of the State including: (1) one juror's repeated equivocations about his ability to recommend the death penalty and also his expressed concerns about following the law of the State of North Carolina; and (2) the other juror's statement that she could not recommend the death penalty for this defendant.

## 3. Jury— capital trial—requested preselection instruction—process of sentencing someone to death

The trial court did not abuse its discretion in a multiple murder prosecution by rejecting the specific preselection instruction proposed by defendant which would have explained the process of sentencing someone to death, because: (1) a review of the record reveals that the trial court correctly instructed the potential jurors about the law governing the capital sentencing process; (2) the actual instructions given by the trial judge were similar in substance to those requested by defendant; and (3) defendant's argument that prejudice occurred is purely speculative.

## 4. Jury— capital trial—right to impartial jury—voir dire concerning death penalty

The trial court did not abuse its discretion or impair defendant's right to an impartial jury in a multiple murder prosecution by overruling his objection to a line of questioning by the State which defendant claims chilled his right to conduct an adequate

STATE v. ROACHE

[358 N.C. 243 (2004)]

voir dire concerning whether a prospective juror would automatically vote to impose the death penalty upon defendant's conviction regardless of any evidence of mitigating circumstances, because: (1) the prosecutor's questions were a correct statement of the law; and (2) the questions served to ensure that the impaneled jury would consider both punishment alternatives before making a punishment recommendation.

**5. Jury— statutory obligation—full panel of twelve jurors**

The trial court did not err in a capital multiple murder prosecution by allowing the State to pass individual jurors to defendant rather than a panel of twelve because: (1) N.C.G.S. § 15A-1214(j) authorizes a trial judge in a capital case to allow individual voir dire at his or her discretion for good cause shown; (2) when the trial court directs individual voir dire on all issues pursuant to N.C.G.S. § 15A-1214(j), all parties are required either to accept or reject a juror before the next prospective juror is called; (3) in the instant case, inasmuch as defendant did not request a finding of good cause when the trial judge indicated that he had reviewed the statute and was satisfied that the procedure was permitted, it is presumed that the trial judge found the necessary good cause; and (4) although defendant contends that the improper jury selection procedure violated his constitutional right to a fair and impartial jury, defendant did not raise this constitutional issue at trial, and thus, failed to preserve this assignment of error for appellate review.

**6. Jury— juror discussing opinion in jury pool room—plain error analysis**

The trial court did not commit plain error in a multiple murder prosecution by failing to intervene ex mero motu when a prospective juror revealed during questioning that another unnamed member of the venire had discussed his or her opinions of the case in the jury pool room because defendant did not object to this alleged error at trial, and plain error review is limited to errors in a trial court's jury instructions or a trial court's rulings on admissibility of evidence.

**7. Constitutional Law— effective assistance of counsel—failure to request court action**

Defendant's right to effective assistance of counsel was not violated in a multiple murder prosecution based on his attorneys' failure to request that the court intervene when a prospective

juror revealed during questioning that another unnamed member of the venire had discussed his or her opinions of the case in the jury pool room, because: (1) the juror was thoroughly examined as to her ability to be impartial; and (2) counsel's failure to object or to challenge that day's venire was not prejudicial when the pertinent juror was the only juror or alternate juror drawn from the panel called for 28 March 2001, and as a result, she was the only person who potentially could have been tainted by the unknown venire-member's comments that also could have prejudiced defendant's trial.

**8. Witnesses— pretrial motion to sequester—abuse of discretion standard**

The trial court did not err in a multiple murder prosecution by denying defendant's pretrial motion under N.C.G.S. § 8C-1, Rule 615 to sequester witnesses during the guilt phase of trial even though defendant contends it allowed members of the victims' family to be present in the courtroom throughout the presentation of testimony at the guilt phase which unduly elicited the jury's sympathy, because: (1) a ruling on a motion to sequester witnesses rests within the sound discretion of the trial court; and (2) defendant failed to demonstrate that the trial court's judgment was so arbitrary that it would constitute an abuse of discretion.

**9. Criminal Law— arraignment—same day trial began**

The trial court did not violate N.C.G.S. § 15A-943(b) in a multiple murder prosecution by arraigning defendant on the same day his trial began, nor was his counsel ineffective based on a failure to object to this procedure, because: (1) defendant waived his right to a week's interlude between his arraignment and trial; and (2) defense counsel were well-prepared for trial at that time.

**10. Constitutional Law— effective assistance of counsel—trial strategy**

Defendant did not receive ineffective assistance of counsel in a multiple murder prosecution based on defense counsel's admission during opening arguments of a murder for which defendant was not on trial before the trial court had the chance to rule on defendant's motion to suppress that crime, his concession that defendant was involved in a conspiracy to commit armed robbery, his acknowledgment of an aggravating circumstance by admitting the murder was brutal, and his allegedly undermining

the trial strategy now claimed by defendant that defendant lacked the capability to make rational choices about his actions on the night in question, because: (1) defense counsel's decision to mitigate the effect of the murder by previewing it for the jury in his opening statement was reasonable and acceptable trial strategy given the likelihood that this evidence would be admitted; (2) the decision to tell the jury about defendant participating in a plan with three other men to rob drug dealers was a reasonable strategy in that it merely forecast the evidence the jury would hear later in the trial, and a counsel's statement of a fact strongly suggesting guilt of a crime does not necessarily amount to an admission of legal guilt; (3) describing a murder as "brutal" does not satisfy the legal standard in the § 15A-2000(e)(9) aggravator that the capital felony was heinous, atrocious, or cruel; (4) viewed in light of the definition of diminished capacity, the statement that defendant "made the wrong choice" by no measure suggested that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (5) defense counsel's admission of a murder for which defendant was not on trial did not rise to the level of the act condemned by our Supreme Court in *State v. Harbison*, 315 N.C. 175 (1985), and our Supreme Court refuses to find per se ineffective assistance of counsel in this case.

**11. Evidence— videotape—photographs—statements by defendant—speculation—testimony**

The trial court did not abuse its discretion in a multiple murder prosecution by allowing the State to introduce five pieces of evidence including a videotape of the crime scene, photographs of a murder victim for which defendant was not on trial, specific statements by defendant, a witness's speculation, and the testimony of another witness, because: (1) the videotape provided a unique perspective that the still photographs admitted into evidence did not depict, and the trial court gave a limiting instruction to the jury before it viewed the videotape, instructing it to consider the videotape only for the purpose of illustrating an officer's testimony; (2) the photographs lent credibility to defendant's confession and helped to demonstrate the circumstances and chain of events leading to the crimes for which defendant was being tried; (3) defendant's remarks concerning his potential for future dangerousness had significant probative value in light of the State's burden of proving premeditation and deliberation and were relevant to defendant's defense of diminished capacity;

**STATE v. ROACHE**

[358 N.C. 243 (2004)]

(4) a witness's statement was properly admissible as a shorthand restatement of his perception at the time of the attack that defendant was the aggressor and would have done the witness severe bodily harm; and (5) meaningful review of defendant's challenges to another witness's testimony was impossible when defendant referred the Court to the entirety of the witness's testimony rather than to any particular portions of her testimony, and it cannot be concluded that the mere fact that a relative of the victims testified was so inflammatory as to constitute error.

## 12. Evidence— prosecutor's arguments in codefendant's case—not admissions of party opponent—not evidence

The trial court did not err in a multiple murder prosecution by excluding two of defendant's proffered exhibits consisting of excerpts from the State's arguments to the jury in a codefendant's trial in which the prosecutor avowed that the codefendant committed the murders of two of the victims, because: (1) our Supreme Court has already decided that arguments of counsel are not evidence or admissions of a party opponent, and (2) based on the fact that the district attorney's arguments from the codefendant's trial are inadmissible, defendant's constitutional argument also fails.

## 13. Constitutional Law— right to remain silent—effective assistance of counsel—failure to answer question about location of coparticipant after arrest

The trial court did not violate defendant's right to post-arrest silence in a multiple murder prosecution by overruling defendant's objection to an investigator's testimony that defendant did not answer a question about the location of his partner in crime shortly after his arrest, and his attorney's failure to raise constitutional grounds for the objection was not ineffective assistance of counsel, because: (1) the wording and context of counsel's objection coupled with his failure to object to another mention of defendant's silence makes it clear that his objection was based on a concern about incomplete discovery rather than constitutional error, and constitutional arguments not raised at trial are not preserved for appellate review; and (2) defendant has failed to show prejudice arising from this exchange for his ineffective assistance of counsel claim.

STATE v. ROACHE

[358 N.C. 243 (2004)]

**14. Appeal and Error— preservation of issues—pretrial motion to suppress—objection at trial**

Although defendant contends the trial court erred in a multiple murder prosecution by denying his pretrial motion to suppress evidence concerning defendant's attempted robbery of another victim, this argument is overruled, because: (1) defendant did not object to the victim's testimony, a motion in limine is insufficient to preserve for appeal the question of admissibility of evidence if the defendant does not object, and defendant has neither assigned nor argued plain error as to the admission of this evidence; and (2) defendant was unable to show prejudice when at the time the State introduced the victim's testimony, defendant had already given a detailed description of the attempted robbery during his opening statement.

**15. Evidence— testimony—defendant covering for someone else**

The trial court did not err in a multiple murder prosecution by refusing to allow defendant's former co-worker to testify that she believed that defendant was covering for his coparticipant, and defense counsel's failure to proffer this testimony did not amount to ineffective assistance of counsel, because: (1) the type of opinion to which the witness allegedly would have testified was not a shorthand statement of fact for the reason that it was not rationally based on her perception; (2) testimony about a defendant's motivation for confessing to a crime, where as here the opinion is based on a telephone conversation and a prior relationship with a defendant, is beyond the purview of N.C.G.S. § 8C-1, Rule 701; and (3) defendant's claims of ineffective assistance fail when the witness was not competent to testify as to whether defendant was covering for his coparticipant.

**16. Evidence— hearsay—corroboration—diminished capacity**

The trial court did not err in a multiple murder prosecution by preventing defendant from presenting specific testimony from three witnesses who allegedly would have corroborated the testimony of defendant's expert witness to show that defendant's actions on the night of the murders were the result of diminished capacity based on the traumatic environment in which he was raised and his alcohol and drug use before the murders, because: (1) the testimony of two of the witnesses was properly excluded as inadmissible hearsay since the rule does not justify admission of extrajudicial declarations of someone other than the witness

purportedly being corroborated; and (2) the testimony the other witness would have given was so tenuously related to the issue of defendant's diminished capacity that it could not be said to be relevant under N.C.G.S. § 8C-1, Rule 401.

**17. Appeal and Error— preservation of issues—objections sustained**

Although defendant contends the trial court erred by allowing the State to repeatedly pose improper questions on cross-examination of defendant's witnesses and by failing to intervene ex mero motu to prevent the prosecutor from making certain statements during closing argument, any alleged error is not properly before the Court and would not have resulted in prejudice, because: (1) the trial court sustained defendant's objections to the questions specifically addressed by defendant in his brief; and (2) our Supreme Court will not review the propriety of questions for which the trial court sustained a defendant's objection absent a further request being denied by the court.

**18. Criminal Law— prosecutor's argument—comparison of defendant to wild dogs—acting in concert**

Although the prosecution in a multiple murder case improperly argued during closing arguments that defendant and his coparticipant packed up like wild dogs that were high on the taste of blood and power over their victims, the trial court did not err by failing to intervene ex mero motu given the overwhelming evidence of defendant's guilt and the fact that the remarks did not so infect the trial with unfairness that they rendered the conviction fundamentally unfair.

**19. Criminal Law— prosecutor's argument—jurors put self in victims' places**

The prosecutor's closing argument in a multiple murder prosecution did not improperly invite the jurors to put themselves in the victims' places through several comments during closing arguments, because: (1) the prosecutor merely highlighted the random nature of this killing, which has been held to be permissible; and (2) our Supreme Court has repeatedly found no impropriety when the prosecutor asks the jury to imagine the fear and emotions of a victim.

**20. Criminal Law— prosecutor's argument—differences in life style between victims and defendant**

The trial court in a multiple murder prosecution did not improperly allow the prosecutor to argue to the jury during closing arguments to convict defendant not because he was guilty, but based on the fact that he was of less worth than the victims, because: (1) the prosecutor merely drew a comparison to highlight the randomness of the murders and the innocence of the victims who had an expectation of safety in their respective homes, factors which were relevant to the issue of malice; and (2) the prosecutor did not go so far as to suggest to the jury that it base its decision on the differences in life style between the victims and defendant.

**21. Appeal and Error— preservation of issues—failure to make argument**

Although defendant contends the trial court erred by allowing the prosecutor to state during closing arguments that defendant sits over there and grins and has a big time while his attorneys try to paint him up as being the victim, this assignment of error is overruled because: (1) beyond citing this argument as problematic, defendant makes no argument as to why it is improper; and (2) N.C. R. App. P. 28(a) limits appellate review to issues defined clearly and supported by arguments and authorities.

**22. Criminal Law— prosecutor's argument—expert's payment for testimony—comments not grossly improper**

Although the prosecutor's comments during closing arguments about defendant's mental health expert's receipt of $5,000 in compensation for testifying verge on being unacceptable comments that the expert's opinion testimony was bought or was perjured for compensation, particularly the statement that you can "get whatever you want" for $5,000, such comments were not so grossly improper as to require intervention by the trial court ex mero motu.

**23. Criminal Law— prosecutor's argument—defense counsel's integrity**

The trial court did not err in a multiple murder prosecution by failing to intervene ex mero motu during the prosecutor's closing argument that allegedly reflect negatively on defense counsel's integrity because considered in context, the statements

defendant contends reflected poorly on defense counsel are more properly viewed as shorthand commentary on the arguments presented by defense counsel during closing statements.

**24. Criminal Law— prosecutor's argument—personal opinion**

The trial court did not err in a multiple murder prosecution by failing to intervene ex mero motu to stop the two district attorneys from inserting what defendant alleges was their own personal opinion throughout closing arguments, because: (1) the prosecutors' statements were nothing more than rhetorical flourishes made to advocate zealously for conviction; and (2) rather than stating his own beliefs, one of the prosecutors was emphasizing the severity of the crimes and advocating the State's position that defendant's evidence of his difficult childhood did not justify a diminished capacity defense.

**25. Constitutional Law— effective assistance of counsel—failure to object**

Defendant did not receive ineffective assistance of counsel in a multiple murder prosecution based on defense counsel's failure to object to the prosecutor's statements during closing arguments and by failing to request a mistrial, because it cannot be concluded that trial counsel's failure to object or to move for mistrial on the basis of the challenged statements was not within the bounds of accepted professional representation when the challenged comments did not render defendant's trial fundamentally unfair nor deprive defendant of a trial whose result was unreliable.

**26. Criminal Law— instructions—simply satisfied with defendant's evidence**

The trial court did not err in a multiple murder prosecution by instructing the jury that it must be "simply satisfied" with defendant's evidence in order to find it believable, because: (1) the trial court properly charged the jury as to the burden of proof at two separate points in the jury charge by specifically stating that defendant had no burden of proof and also that the jury was to decide the case using as much of the evidence as they saw fit to believe, to the extent of beyond a reasonable doubt in accordance with what the State must prove; and (2) the charge to the jury and the trial court's supplemental clarification were correct statements of law and did not place an impermissible burden on defendant.

**27. Homicide— diminished capacity—instructions**

The trial court did not err in a multiple murder prosecution by refusing to give the exact wording of defendant's requested instruction on diminished capacity which stated that the jury must consider the evidence presented about mental capacity before determining defendant's guilt of premeditated and deliberate murder, because: (1) the trial court used the pattern jury instructions on diminished capacity which direct a jury to consider the defendant's mental capacity and whether or not intoxication or a drugged condition prevented the defendant from forming the specific intent necessary to commit the crimes charged; and (2) the charge as a whole was an accurate statement of the law.

**28. Homicide—    felony    murder—diminished    capacity—instructions**

The trial court did not err in a multiple murder prosecution by failing to give an instruction on diminished capacity when instructing the jury on felony murder for the murder of one of the victims and by failing to refer to diminished capacity based on mental illness for the mandate given with reference to the felony murder of that victim, because by addressing specific intent and diminished capacity within the instruction on another victim's death, the trial court informed the jury that diminished capacity applied to armed robbery, which was the underlying felony in this victim's murder.

**29. Criminal Law— instructions—diminished capacity—acting in concert**

The trial court did not err in a multiple murder prosecution by failing to instruct on diminished capacity with regard to acting in concert, because our Supreme Court has never applied the doctrine of diminished capacity to the general intent necessary for acting in concert, and defendant has cited no authority to support extension of its application.

**30. Criminal Law— instructions—diminished capacity—jury request for clarification on points of law**

The trial court did not commit plain error in a multiple murder prosecution by failing to include an instruction on diminished capacity when the jury requested clarification on points of law after deliberations had begun, because: (1) the trial court prefaced the reinstruction by admonishing that the reinstruction was not to take the place of the original charge and that the com-

plete charge would not be repeated but must be considered; (2) the jury did not specifically request reinstruction on diminished capacity, although the trial court included such instruction with regard to some of the crimes; and (3) the trial court appropriately responded to the jury's questions by answering only that which was asked.

## 31. Constitutional Law— effective assistance of counsel—failure to object to reinstruction

Defendant did not receive ineffective assistance of counsel in a multiple murder prosecution based on defense counsel's failure to object to reinstruction on points of law after deliberations had begun, because inasmuch as the reinstruction was not erroneous and did not prejudice defendant, trial counsel's failure to renew earlier objections could not have amounted to ineffective assistance.

## 32. Criminal Law— shifting burden of proof

The trial court did not err in a multiple murder prosecution by allegedly shifting the State's burden of proof to defendant, because the trial court did not shift the State's burden or otherwise violate defendant's constitutional rights.

## 33. Kidnapping— first-degree—instruction—safe place

The trial court did not err in a multiple murder prosecution by its instruction to the jury on the "not released in a safe place" element of first-degree kidnapping that a person who is killed during the course of a kidnapping is not released in a safe place, because: (1) the instruction was proper and did not impermissibly usurp the jury's fact-finding role; (2) even assuming arguendo that the instruction was improper, defendant would not be prejudiced in this case when the "not released in a safe place" element applies to first-degree kidnapping, but not to second-degree kidnapping, but either crime would have served as an underlying felony for felony murder; and (3) even had the jury not been instructed that murder was the equivalent of not being released in a safe place, defendant would have been convicted of felony murder.

## 34. Evidence— murder for which defendant was not on trial—instructions—intent

The trial court did not commit plain error in a multiple murder prosecution by its instruction to the jury regarding evidence

of a murder for which defendant was not on trial that allegedly allowed the jury to consider the evidence too broadly, and defendant did not receive ineffective assistance of counsel based on a failure to object to this instruction, because: (1) the instruction was consistent with N.C.G.S. § 8C-1, Rule 404(b) which allows the State to introduce evidence of other crimes of a defendant for the limited purpose of showing proof of motive, opportunity, intent, preparation, or a plan; and (2) the murder could potentially be seen as evidence of defendant's intent to kill or as part of defendant's preparation in or overall plan for the crime spree.

**35. Homicide— felony murder—instructions—unanimous jury**

The trial court did not err in a multiple murder prosecution by failing to instruct the jury on felony murder that the jury had to be unanimous in determining whether defendant was guilty of felony murder based on defendant's commission of an underlying felony or based on acting in concert with his coparticipant in committing an underlying felony, and defendant did not receive ineffective assistance of counsel based on a failure to object to this instruction, because: (1) the trial court properly instructed the jury that it must be unanimous in finding defendant guilty of first-degree murder, whether based on felony murder or on premeditation and deliberation, and that the jury must be unanimous in finding which felony defendant engaged in that subjected him to the felony murder rule; (2) whether defendant acted in concert with his coparticipant or committed the underlying felony, defendant would still be guilty of felony murder in either case; and (3) the jurors were unanimous in finding defendant to be guilty of felony murder.

**36. Homicide— felony murder—instructions—intent**

The trial court did not err in a multiple murder prosecution by its instruction to the jury on intent with respect to the murder of one of the victims, because: (1) the trial court's instruction viewed as a whole correctly charged the jury on felony murder; and (2) the pertinent part of the instruction to which defendant objects meant that whether the felonies were committed by defendant or by his coparticipant, if defendant had the specific intent to commit one or any of the felonies, then he would be guilty of felony murder.

## 37. Homicide— alternative theories—aiding and abetting—acting in concert

The trial court did not err in a multiple murder prosecution by overruling defendant's objection to the State's use of two alternative theories of guilt including aiding and abetting in connection with premeditation and deliberation, and acting in concert with regard to felony murder, because: (1) defendant's argument that the two theories utilized by the State are mutually exclusive has no merit, and in any given case, both theories may be proven by the same evidence; and (2) defendant failed to show prejudice.

## 38. Sentencing— exhibits—arguments in coparticipant's trial—coparticipant committed murders

The trial court did not err in a multiple murder sentencing proceeding by denying defendant's motion at sentencing to admit two exhibits which were excerpts from the State's arguments to the jury at a coparticipant's trial during which the prosecutor avowed that the coparticipant committed two of the murders, because: (1) the exhibits were. relevant only to the issue of whether defendant actually committed the murders for which he was already convicted, and thus, this evidence was appropriately excluded from the sentencing hearing; (2) the jury's final sentencing recommendation in this case demonstrates that defendant was not prejudiced by the exclusion of this evidence even had the trial court erred in excluding it when defendant was sentenced to life imprisonment instead of death for these two murders; and (3) although defendant now tries to argue that the admission of this statement could have had an impact on the jury's finding of the (e)(11) "course of conduct" aggravator in the murders for which he did receive the death penalty, defendant did not raise this argument at trial, and thus, it is deemed waived on appeal.

## 39. Sentencing— coparticipant's sentence—life imprisonment

The trial court did not err in a multiple murder sentencing proceeding by sustaining the State's objection to defendant's attempt to introduce the fact that his coparticipant was sentenced to life imprisonment for these same five murders, because: (1) our Supreme Court has previously determined that a coparticipant's sentence has no mitigating effect in and of itself; (2) the fact that the defendant's accomplices received a lesser

sentence is not an extenuating circumstance; (3) although the jury may consider an accomplice's sentence as a mitigating circumstance under the catchall instruction, this consideration applies in a case where evidence of the coparticipant's sentence is already before the court, such as where the coparticipant testified at trial and evidence of a plea bargain was presented by way of impeachment; (4) at no point did counsel suggest that this evidence be admitted for consideration in conjunction with the (f)(9) catchall mitigator; and (5) a defendant has no constitutional right to have his coparticipant's sentence considered in mitigation since such evidence is irrelevant to the sentencing proceeding.

### 40. Sentencing— victim impact statements—unique loss to society

The trial court did not err in a multiple murder sentencing proceeding by admitting victim impact statements, because: (1) the State properly used victim impact testimony to describe the specific harm caused by defendant's actions, including the psychological repercussions the murders had on family members and the community; and (2) the evidence was not so inflammatory as to render defendant's sentencing hearing fundamentally unfair, but instead reminded the sentencer that the victims were individuals whose deaths represented a unique loss to society and in particular to their families.

### 41. Sentencing— defendant's prior criminal history—effective assistance of counsel

The trial court did not err or commit plain error in a multiple murder sentencing proceeding by permitting the State to cross-examine defendant's mother about defendant's prior criminal history, and defense counsel was not ineffective based on a failure to object to these additional questions, because: (1) evidence of defendant's prior criminal history, including five cases of assault, was admitted during cross-examination of a witness by the State; (2) a trial court has great discretion to admit any evidence relevant to sentencing; (3) defendant's mother testified on direct examination that she did not know her son to be violent when he was not drinking and that defendant would drink in a shed behind her home; and (4) defense counsel was not ineffective by failing to object to these additional questions since the questions were relevant and reliable, and thus, were admissible.

**42. Sentencing— coparticipant's behavior—relevancy**

The trial court did not abuse its discretion in a multiple murder sentencing proceeding by sustaining the State's objection to defendant's attempt to elicit evidence from a behavioral specialist concerning his coparticipant's behavior, because the coparticipant's behaviors from ten years earlier, the only time period about which the behavioral specialist apparently had knowledge, cannot be said to be relevant to defendant's character, record, or the circumstances of the offense.

**43. Sentencing— cross-examination—aggressive behavior— relationship with family—relevancy—good faith**

The trial court did not err in a multiple murder sentencing proceeding by failing to intervene ex mero motu to stop the prosecutor's cross-examination of two witnesses concerning defendant's aggressive behavior while incarcerated, defendant's socializing with his sister and their father in the courtroom, and the source of funds enabling defendant's sister to be present at the trial, and defense counsel was not ineffective based on a failure to object to these additional questions, because: (1) the trial court's implicit determination that the evidence in question was relevant to the jury's sentencing decision did not constitute an abuse of discretion when the testimony concerning defendant's behavior in prison was relevant to rebut a witness's testimony on direct examination that defendant's character had changed while he was in prison and since he let the Lord come into his life, the State's questions to defendant's sister about defendant's interaction with his father in the courtroom were designed to discredit defendant's evidence that he and his father had a poor relationship, and the State sought to show that defendant's sister was at the trial at someone else's behest rather than out of sisterly devotion; and (2) defendant has pointed to nothing in the record suggesting that the prosecutor asked these questions in bad faith.

**44. Sentencing— prosecutor's argument—personal opinion**

The trial court did not err in a multiple murder sentencing proceeding by failing to intervene ex mero motu when the prosecutor allegedly injected personal opinion into his closing argument by use of phrases such as "we think," "we believe," "our perspective," "our idea," and "I come before you to state that many aggravating factors exist in this case," because: (1) the complained-of passages are not impermissible statements of opinion;

and (2) the phrases would have been understood by the jury as remonstrances by the prosecutor to find that the aggravating circumstances existed and outweighed the proposed mitigating circumstances to such an extent that the death penalty was the proper sentencing recommendation.

### 45. Sentencing— prosecutor's argument—aggravating circumstances—mitigating circumstances

The trial court did not err in a multiple murder sentencing proceeding by failing to intervene ex mero motu during the prosecutor's closing argument concerning the statutory scheme whereby the State is permitted to submit fewer aggravators than a defendant is allowed to submit mitigators, because our Supreme Court has upheld arguments of this nature in the past as methods of attacking the weight of mitigating circumstances and convincing the jury that a greater number of mitigators should not outweigh a lesser number of aggravators.

### 46. Sentencing— prosecutor's argument—place self in position of victims

The trial court did not err in a multiple murder sentencing proceeding by failing to intervene ex mero motu during the prosecutor's closing argument that allegedly urged the jury to place itself in the position of the victims, because the prosecutor's argument was less about jurors imagining themselves as the victims and more of an effort to force the jury to appreciate fully the circumstances and impact of the crime.

### 47. Sentencing— prosecutor's argument—speculation

The trial court did not err in a multiple murder sentencing proceeding by failing to intervene ex mero motu during the prosecutor's closing argument that allegedly speculated on matters outside of the record, because: (1) in regard to the statements that one victim was shielding his wife, another victim was protecting her daughter, and other statements concerning how the victims felt physically and emotionally during the attack, the prosecutor did no more than reconstruct the series of events from the perspectives of the victims using defendant's confession and the physical evidence at the scene and from the coroner's report along with reasonable inferences from these sources; (2) in regard to the statement that one of the victim's fathers was a good man with a broken heart who can't stay in Haywood County at the home that he put there since defendant destroyed his only

daughter, and that the father was unable to take the witness stand and give victim impact evidence, one of the victims' daughters had already testified that he could not live in his Haywood County home since the crimes and that he got upset if anyone mentioned his daughter's name; (3) in regard to the statement that defendant had victimized people numbering in the hundreds, this argument was a rhetorical method of reminding the jury that the victims were sentient beings with close family ties before they were murdered by defendant; (4) in regard to the prosecutor's statement that if the other daughters of two of the victims had also been present, then they probably would have been the victims of the mass murderer and atrocity, a reasonable inference can be drawn from the evidence that had there been more people present at the scene, defendant might have killed them also; (5) in regard to the prosecutor's comment about defendant's laughing and grinning during the course of the trial, a prosecutor may properly comment on a defendant's demeanor displayed throughout the trial; and (6) in regard to the prosecutor's statement that if the adult victims could be at trial, they would ask defendant to kill them instead of their child, the prosecutor was using the wide latitude afforded counsel in hotly contested cases to suggest that the murder of the fourteen-year-old victim was worthy of a death sentence.

**48. Appeal and Error— preservation of issues—failure to make argument**

Although defendant contends the trial court erred in a multiple murder sentencing proceeding by failing to intervene ex mero motu when the prosecutor allegedly argued to the jurors the positive impact a death verdict would have on the surviving relatives of the victims, defendant has waived his right to appellate review of this issue because defendant does no more than cite the allegedly problematic passages.

**49. Sentencing— prosecutor's argument—religion**

The trial court did not err in a multiple murder sentencing proceeding by failing to intervene ex mero motu when the prosecutor argued that each juror would lie in bed and thank the Lord for their own safety, the safety of their family, and for the knowledge he or she did the right thing, because: (1) rather than invoking religious law over secular law, this argument merely urged jurors to make the decision the State viewed as the proper one which was recommending a death sentence; and (2) even if it be

STATE v. ROACHE

[358 N.C. 243 (2004)]

assumed arguendo that this statement was improper, the preju-
dice, if any, was neutralized by defense counsels' use of religious
arguments during their closing analogizing that jurors should be
merciful as Jesus Christ was.

**50. Constitutional Law— effective assistance of counsel—fail-
ure to object**

Defendant did not receive ineffective assistance of counsel in
a multiple murder sentencing proceeding based on defense coun-
sel's failure to object to alleged errors in the State's closing argu-
ment and failure to request a mistrial.

**51. Sentencing— nonstatutory mitigating circumstances—
peremptory instructions**

The trial court did not err in a multiple murder sentencing
proceeding by refusing to give peremptory instructions for two
of the forty-four nonstatutory mitigating circumstances sub-
mitted to the jury as to the murder of two of the victims, in-
cluding that defendant did not flee after the murders and that
defendant displayed remorse for his actions, because: (1) the
evidence presented at trial permitted the inference that defend-
ant intended to flee Haywood County upon leaving the scene of
the crime; and (2) defendant's evidence showing remorse is indi-
rect and tenuous.

**52. Sentencing— mitigating circumstances—peremptory
instructions—mental or emotional disturbance—impaired
capacity**

The trial court did not commit plain error in a multiple mur-
der sentencing proceeding by failing to give peremptory in-
structions on the N.C.G.S. § 15A-2000(f)(2) mitigating circum-
stance that the murders were committed while defendant was
under the influence of a mental or emotional disturbance and the
N.C.G.S. § 15A-2000(f)(6) mitigating circumstance that defend-
ant's capacity to appreciate the criminality of his conduct was
impaired, and defense counsel did not provide ineffective assist-
ance by failing to request such instructions, because a trial
court's failure to give a peremptory instruction relating to a
defendant's mental illness is not error where the evidence
supporting the instruction came from a mental health profes-
sional evaluating the defendant in preparation for trial since this
evidence lacks sufficient indicia of reliability to permit the con-
clusion that it is manifestly credible.

**53. Sentencing— aggravating circumstances—same evidence**

The trial court did not commit plain error in a multiple murder sentencing proceeding by failing to instruct the jury that it could not use the same evidence to support multiple aggravating circumstances, because: (1) defendant failed to make any request for an instruction that the same evidence cannot be used as a basis for finding more than one aggravating circumstance; and (2) assuming arguendo that failure to give the instruction was error, defendant has failed to demonstrate that the jury probably would have returned a different verdict absent the omission in the instructions.

**54. Sentencing— death penalty—proportionate**

The trial court did not err by sentencing defendant to the death penalty for two first-degree murders, because: (1) defendant was convicted of five first-degree murders, three on the basis of premeditation and deliberation and under the felony murder rule and two solely under the felony murder rule; (2) defendant killed one victim and then killed four other victims in an attempt to rid the scene of witnesses; (3) defendant invaded the home of two of the victims and killed five people from three generations of one family; and (4) the jury found three aggravating circumstances including the N.C.G.S. § 15A-2000(e)(4) aggravator that the capital felonies were committed for the purpose of avoiding or preventing a lawful arrest; the N.C.G.S. § 15A-2000(e)(9) aggravator that the murders were especially heinous, atrocious, or cruel; and the N.C.G.S. § 15A-2000(e)(11) aggravator that the murders were part of a course of conduct of other crimes of violence against other persons, and our Supreme Court has deemed the (e)(9) and (e)(11) aggravating circumstances standing alone to be sufficient to sustain a sentence of death.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of death entered by Judge James U. Downs on 24 and 25 April 2001 in Superior Court, Haywood County, upon a jury verdict finding defendant guilty of two counts of first-degree murder. On 4 November 2002, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments. Heard in the Supreme Court 9 September 2003.

*Roy Cooper, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*James P. Cooney III for defendant-appellant.*

PARKER, Justice.

Defendant Charles Wesley Roache was indicted on 18 October 1999 for the first-degree murders of Earl Phillips, Cora Owens Phillips, Eddie Lewis Phillips, Mitzi Carolyn Blazer Phillips, and Katie Phillips. Defendant was tried capitally and found guilty of first-degree murder based on felony murder alone in the deaths of Earl Phillips and Cora Phillips. Defendant was found guilty of first-degree murder based on premeditation and deliberation and felony murder for the deaths of Eddie Phillips, Mitzi Phillips, and Katie Phillips. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to death for the murders of Mitzi Phillips and Katie Phillips, and to life imprisonment without parole for each of the other three murders. The trial court entered judgment accordingly.

The State's evidence tended to show that on the evening of 30 September 1999 defendant and Chris Lippard were on Rabbit Skin Road in the vicinity of the victims' houses. The two had been on a crime spree of approximately forty-eight hours duration, during which defendant killed a man named Chad Watt early in the morning of 29 September 1999 and assaulted a man named Bart Long at a rest area west of Hickory on Interstate 40 in the afternoon of 30 September 1999. Defendant and Lippard were driving on Interstate 40 in an attempt to leave North Carolina when they left the interstate at exit 20, Jonathan Creek Road, which intersects Rabbit Skin Road approximately thirty to fifty yards away. Lippard accidentally backed the truck off the road and into a ditch.

After their truck was disabled, Lippard offered the driver of one vehicle that stopped fifty dollars to drive them to the interstate. Defendant also attempted to stop at least one additional vehicle to get a ride. Two of the people in these cars later testified that one of the two men carried a case of beer. The efforts to obtain a ride from passers-by were unsuccessful.

Defendant and Lippard walked towards the nearest house on Rabbit Skin Road in order to steal a car. This house was 126 Earl Lane, the home of Earl and Cora Phillips. Lippard went into the house. Defendant entered the house after he heard a woman scream-

STATE v. ROACHE

[358 N.C. 243 (2004)]

ing from within. Upon entering, defendant saw the woman, Cora Phillips, on the floor with Lippard holding a shotgun to her head. The woman's husband, Earl Phillips, pleaded with defendant to prevent Lippard from killing the woman. Defendant assured Earl that no one was going to die.

At defendant's request, Earl Phillips showed defendant the cabinet in which Earl kept his guns. Defendant took a 20 gauge shotgun, several shotgun shells, and a .22 caliber rifle. Defendant then disabled the telephone by cutting the cord leading into the wall. He also bound Earl and Cora Phillips' hands together with duct tape. Defendant and Lippard left in Earl Phillips' 1986 Ford pickup truck.

Defendant and Lippard drove Phillips' truck away from the house towards Rabbit Skin Road. While driving down the lane, they passed a small red car heading towards the house. Before reaching the intersection of Earl Lane and Rabbit Skin Road, Lippard overturned the truck. Defendant broke the passenger window in order for the pair to escape. Lippard returned to the house. Defendant stayed behind to gather their items from the truck and then waited in the woods near the wrecked truck.

Shortly thereafter, defendant heard Lippard yelling for assistance. The man from the red car was fighting with Lippard for control of a gun. Defendant shot the man, Eddie Phillips, once in the chest with the shotgun he was carrying. Defendant then reloaded the gun and went to the house with Lippard. The woman from the car, Mitzi Phillips, was standing in the doorway refusing the pair entry. Defendant broke open the door and shot Mitzi Phillips once in the face. Defendant saw a girl, fourteen-year-old Katie Phillips, run into the bathroom. He pushed open the door to find her sitting on the toilet. Defendant shot Katie Phillips once in the side of the head. Lippard, meanwhile, had gone to the living room where he and defendant had left Cora and Earl Phillips bound. Defendant returned to that room to find Earl Phillips slumped over. Cora Phillips was lying on the floor with blood coming from her head. Defendant shot both Cora and Earl Phillips once in the head.

Lippard drove himself and defendant away from the house in the red car, a 1993 Saturn belonging to Mitzi Phillips. While driving down Earl Lane they passed one car, later found to belong to Danny Messer. As they reached the end of the lane they passed another car, later found to belong to Todd Berrong. They drove the Saturn onto Interstate 40.

Danny Messer had been driving home that evening when he saw Earl Phillips' truck upside down at the end of Earl Lane. He turned into the lane to notify Earl Phillips that his truck "had rolled off." As he drove up to Earl and Cora Phillips' house, he saw Mitzi Phillips' red Saturn leave the parking area near the house, heading towards Rabbit Skin Road.

At the house, Messer saw the bodies of four of the victims: Eddie, Mitzi, Earl and Cora Phillips. Messer testified at trial that he believed Eddie Phillips was still alive at that time. After making this discovery, Messer left, encountering Todd Berrong at the end of Earl Lane at Rabbit Skin Road. Although there was some evidence to the contrary, Berrong and Messer apparently returned to the Phillips' house so that Berrong could view the bodies. The two then drove to a convenience store located approximately one-quarter of a mile away, and Berrong called 911.

Berrong testified that he waited at the end of Earl Lane for police. When the police arrived, they noted the locations of the bodies and that all the victims were deceased. The police secured the scene.

After defendant and Lippard left the scene of the crime, they drove for a short distance on Interstate 40 before they hit a concrete divider. The crash disabled the car. The accident occurred approximately one to one and a half miles west of the Jonathan Creek Road exit on Interstate 40. Defendant exited the vehicle and left the highway on the side with the guardrail. Lippard crossed the barrier at the opposite side of the road and disappeared.

Around 8:30 a.m. on 1 October 1999, Jim Fowler discovered defendant hiding under a camper top lying on Fowler's property, about three-quarters of a mile to one mile from the interstate where the red car crashed. Fowler's son called the police while Fowler watched defendant, holding him at gunpoint until a deputy arrived from the Haywood County Sheriff's Department.

Officer Beecher Phillips transported defendant to the sheriff's department, where he turned defendant over to the custody of Detective Larry Bryson and State Bureau of Investigation Agent Toby Hayes. Agent Hayes advised defendant of his rights, and defendant indicated his understanding. Defendant waived his rights by signing a form offered him by Agent Hayes.

Defendant initially told the officers that he had shot the man in the yard, the woman in the kitchen, and the girl in the bathroom. He

stated that Lippard had shot the older couple in the living room. During the course of the questioning and the recording of his statement, however, defendant admitted that he had shot all five victims. He persisted in stating that he was responsible for all five deaths even after officers pointed out the discrepancy between this statement and his earlier story.

Defendant also talked to police about the murder of Chad Watt in Alexander County. This murder resulted from a fight between the two, during which defendant "beat [Watt] so bad [defendant] knew [he]'d have to kill him so he wouldn't tell on [defendant]." Defendant gave police information on the location of the body, which led Alexander County Sheriff's deputies to recover Watts' body on 2 October 1999.

Defendant confessed as well to an attack on a man which occurred at a rest area on Interstate 40 west of Hickory. Defendant pretended to use a urinal while waiting for a victim to enter the restroom. When the victim, a man named Bart Long, entered a stall and sat on the toilet, defendant sprayed him with pepper spray and put him in a sleeper hold. Defendant attempted to obtain the man's wallet, but Long's yells attracted a crowd of people, causing defendant to flee.

Defendant additionally gave police information concerning his accomplice, Chris Lippard. At the time of his initial conversations with police, defendant did not know Lippard's last name. Over the next several days, however, defendant made telephone calls which eventually led him to discover Lippard's last name, information which he shared with police. This information led to Lippard's arrest in New Orleans about a week later.

Pathologists performed autopsies on all five victims on 2 October 1999 in Chapel Hill, North Carolina. Dr. John Butts, the Chief Medical Examiner of North Carolina, either performed or supervised each of these autopsies and testified at defendant's trial about the cause of death for and injuries to each victim. Earl Phillips' autopsy showed severe injury to his head as a result of a contact gunshot wound to the right side of his head, in the area of his right temple, meaning that the barrel of the shotgun was against the body of the victim at the time the gun was fired. Pathologists removed lead shot from his body. Dr. Butts testified that Earl Phillips' death was caused by a shotgun wound to the head. The pathologists also noted that Earl Phillips' hands were bound with duct tape.

STATE v. ROACHE

[358 N.C. 243 (2004)]

Dr. Butts performed the autopsy of Cora Phillips, which revealed several injuries to her body. Her death was due to a single contact shotgun wound in the corner of her mouth on the left side of her face, which caused massive injury to her head. Pathologists found lead pellets and a plastic shot cup in her head. The autopsy also showed blunt force injuries—lacerations and bruising—on her right forearm, which were consistent with defensive injuries. These were incurred before she died. Cora Phillips' hands were also fastened together with duct tape.

The autopsy of the body of Eddie Phillips revealed a single gunshot to the left side of the body which struck multiple organs in the chest and abdomen. Pathologists determined that the gunshot wound was a contact wound. Shotgun pellets and shotgun wadding were recovered from Eddie Phillips' body at the time of the autopsy. In Dr. Butts' opinion the shotgun wound would have resulted in unconsciousness within a matter of seconds. Pathologists also found blunt force injuries on Eddie Phillips' head behind and a little above the left ear; these injuries were likely inflicted while the victim was still alive. Dr. Butts testified that Eddie Phillips' death was caused by the shotgun wound to his chest.

The autopsy on Mitzi Phillips disclosed that she died from a shotgun wound to the head. The entrance wound was a large injury which effectively covered the forehead. There was an exit wound on the right side of the head, where some of the shot pellets had created a hole. Nonetheless, some of the shot pellets remained inside the body. The shot was likely fired from a close range, based on the powder stippling marks on the forehead around the wound.

As to the autopsy on the body of Katie Phillips, Dr. Butts testified that this body had evidence of a single shotgun wound to the head which had entered in the left eye. Some of the shot had exited from the right side of the head, but some shot was still present in the head at the time of the autopsy. The track was through the left eye into the skull. The force of the blow was enough to remove the brain from the cranial wall. Dr. Butts was of the opinion that the shot was fired from close range and was immediately incapacitating. The autopsy also revealed a defensive injury from the shotgun blast to Katie Phillips' left hand, indicating that she had raised her hand to shield herself from the gun shot. The shotgun wound to the head was the cause of Katie Phillips' death.

Dr. Claudia Coleman, an expert in the field of forensic psychology, testified at trial that defendant suffered from a chronic anxiety disorder, had a low average intelligence, and had experienced a violent upbringing. Defendant, according to Dr. Coleman, exhibited features typical of a dependent personality disorder, meaning that he has a high need for affection and security from other individuals. Dr. Coleman also testified to defendant's long history of polysubstance dependence, which she attributed to his anxiety. In the expert's opinion, defendant's alcohol and drug use on the afternoon and night of 30 September 1999 in combination with his personality and his anxiety disorders would have affected his judgment, reasoning, and problem solving capacities at the time he murdered the Phillips family.

## JURISDICTIONAL ISSUE

[1] Defendant first contends that use of the short-form murder indictment taken from N.C.G.S. § 15-144, as a charging instrument deprived the trial court of jurisdiction to sentence defendant to death after his conviction for first-degree murder. Defendant argues in part that aggravating circumstances must be alleged in the indictment in that Article I, Section 22 of the North Carolina Constitution requires that all elements of a crime be set forth in an indictment in order for a court to have jurisdiction over a defendant. Moreover, defendant would have this Court rule that, pursuant to the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556 (2002), aggravating circumstances are elements of first-degree capital murder and, accordingly, must be included in an indictment to comport with the North Carolina Constitution and the Due Process Clause of the Fifth Amendment as well as to avoid violation of the notice guarantee of the Sixth Amendment of the United States Constitution.

This Court addressed each point raised by defendant in the recent case of *State v. Hunt*, 357 N.C. 257, 582 S.E.2d 593 (2003), in which the Court held that, even after *Ring*, the short-form murder indictment is sufficient under both the United States and the North Carolina Constitutions without the inclusion of the aggravating circumstances. *Id.* at 278, 582 S.E.2d at 607. As noted therein, the United States Supreme Court's ruling in *Ring* does not require reconsideration of our earlier holdings that: (i) the short-form murder indictment was an appropriate charging document, *see, e.g., State v. Braxton*, 352 N.C. 158, 173-75, 531 S.E.2d 428, 436-38 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *State v. Wallace*, 351 N.C. 481, 503-08, 528 S.E.2d 326, 341-43, *cert. denied*, 531 U.S.

1018, 148 L. Ed. 2d 498 (2000); and (ii) that the constructive notice provided by the statute in which the aggravators are listed, N.C.G.S. § 15A-2000(e), satisfies all constitutional constraints mentioned by defendant, *see, e.g., State v. Holden,* 321 N.C. 125, 154, 362 S.E.2d 513, 531 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988); *State v. Williams,* 304 N.C. 394, 422, 284 S.E.2d 437, 454 (1981), *cert. denied,* 456 U.S. 932, 72 L. Ed. 2d 450 (1982). This assignment of error is accordingly overruled.

## JURY SELECTION

[2] Defendant assigns error to several aspects of the jury selection. First, defendant contends that the trial court denied his rights under both the North Carolina Constitution and the United States Constitution by erroneously allowing the State's challenges for cause of prospective jurors Charles Lee and Alice Payton. Defendant argues that prospective jurors Lee and Payton unequivocally stated that they could consider both a death sentence and life imprisonment as possible penalties based on the evidence presented at trial and were, thus, improperly excused for cause.

The test for determining when a prospective juror may be excused for cause is whether his views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt,* 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas,* 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). The fact that a prospective juror "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction" is insufficient justification for removal of a juror for cause. *Witherspoon v. Illinois,* 391 U.S. 510, 522, 20 L. Ed. 2d 776, 785 (1968). The decision as to whether a juror's views would prevent or substantially impair the performance of his or her duties is within the trial court's broad discretion, *State v. Gregory,* 340 N.C. 365, 394, 459 S.E.2d 638, 655 (1995), *cert. denied,* 517 U.S. 1108, 134 L. Ed. 2d 478 (1996), to accommodate those situations "where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Wainwright v. Witt,* 469 U.S. at 425-26, 83 L. Ed. 2d at 852. Accordingly, the decision of the trial court to excuse a juror for cause "will not be disturbed absent an abuse of discretion." *State v. Blakeney,* 352 N.C. 287, 299, 531 S.E.2d 799, 810 (2000), *cert. denied,* 531 U.S. 1117, 148 L. Ed. 2d 780 (2001).

STATE v. ROACHE

[358 N.C. 243 (2004)]

Applying the *Wainwright* standard, we conclude that the trial court did not abuse its discretion in excusing these prospective jurors for cause. Both prospective jurors Lee and Payton clearly demonstrated their inability to render a verdict in accordance with the laws of the State. *See* N.C.G.S. § 15A-1212(8) (2003) (providing that a challenge for cause may properly be made on the grounds that, regardless of the facts and circumstances, a juror would be unable to render a verdict in accordance with the laws of North Carolina).

The State challenged prospective juror Lee for cause after his repeated insistence that he was unsure if he could recommend the death penalty and his more direct statement that he "probably could not recommend the death penalty." Furthermore, when the prosecutor asked Lee, "[A]re you saying that you would base [the punishment recommendation] on God's law rather than the law of the State of North Carolina," Lee's response was, "Probably." Defendant points out that Lee did state that he could consider the death penalty as punishment; however, further examination of the transcript reveals that when the prosecutor thereafter asked Lee whether his religious beliefs would prevent him from recommending the death penalty, he again said he did not know. Given Lee's repeated equivocations about his ability to recommend the death penalty, along with his expressed concern about following the law of the State of North Carolina, we hold that the trial court did not abuse its discretion in excusing him for cause.

Prospective juror Payton informed the prosecutor that she had beliefs against the death penalty and that she had made up her mind that she would not give defendant the death penalty. Defendant attempted to rehabilitate her, at which time she agreed that she could listen to all the evidence in the case and consider both punishment alternatives; however, when the prosecutor later asked Payton whether she had stated that she could not and would not vote for the death penalty, she replied, "That's what I said. I told you I didn't believe in death." She went on to confirm again that she "wouldn't vote for the death penalty." Since Payton unequivocally stated that she could not recommend the death penalty for this defendant, we hold that the trial court properly granted the State's challenge for cause.

[3] Defendant next argues that the trial court erred by rejecting the specific preselection instruction proposed by defendant. This instruction would have explained the process of sentencing someone to death. Defendant claims that giving his requested instruction would

have led to more meaningful *voir dire* of the potential jurors. We find defendant's contention to be without merit.

The trial court "has broad discretion 'to see that a competent, fair and impartial jury is impaneled and rulings in this regard will not be reversed absent a showing of abuse of discretion.'" *State v. Black,* 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991) (quoting *State v. Johnson,* 298 N.C. 355, 362, 259 S.E.2d 752, 757 (1979)). A review of the record reveals that the trial court correctly instructed the potential jurors about the law governing the capital sentencing process. The actual instructions given by the trial judge were similar in substance to those requested by defendant. Furthermore, defendant's argument that prejudice occurred is purely speculative. As a result we hold that the trial court did not err in refusing to give defendant's requested preselection instruction. This assignment of error is overruled.

[4] Next, defendant asserts that the trial court impaired his right to an impartial jury when it overruled his objection to a line of questioning by the State which defendant claims chilled his right to conduct an adequate *voir dire* under *Morgan v. Illinois,* 504 U.S. 719, 119 L. Ed. 2d 492 (1992). The United States Supreme Court held in *Morgan* that, under the Due Process Clause of the Fourteenth Amendment, defendants are entitled during *voir dire* to inquire as to whether a prospective juror would automatically vote to impose the death penalty upon defendant's conviction regardless of any evidence of mitigating circumstances. *Id.* at 729, 119 L. Ed. 2d at 503. In the instant case, defendant claims that the State began to "coach" jurors as to how to avoid dismissal on *Morgan* grounds after witnessing the dismissal of several jurors who indicated that they would automatically impose the death penalty on conviction. Defendant cites the following exchange, which occurred during the State's examination of prospective juror Tracie Smiley, and which the prosecutor repeated in a similar fashion with other jurors through the remainder of *voir dire:*

Q: I want to point out also that on the other side of that is if the jury found the defendant guilty of five counts of premeditated and deliberated first degree murder, it would still be their obligation to consider both punishment possibilities, not to fly off and recommend one and not the other just without thinking about it, but still to consider both possibilities. Do you understand where I'm coming from there, ma'am?

A: Hmm-hmm.

Q: In either of those situations, whether it be one or five, Ms. Smiley, could you still consider both punishment possibilities and recommend the one that you and the other jurors felt was appropriate?

A: Yes.

Q: And I want to caution you, and you may hear this mentioned from time to time that there's nothing—the jury is not supposed to do anything running on automatic or nothing just knee jerk. There's a procedure to be followed, things to be weighed and considered.

There will never be a time when the judge is going to tell you that you're supposed to automatically do this or you're supposed to automatically do that. You won't hear that at all. There's a procedure to be followed in a cool-headed way, and to the extent that automatic is a bad word, you don't do anything—

[DEFENSE COUNSEL]: Objection.

[THE COURT]: Overruled.

After considering defendant's claim, we hold that the trial court did not err in overruling defendant's objection. To establish reversible error during *voir dire*, a defendant must show that the trial court abused its discretion and also that prejudice resulted from such error. *State v. Gell*, 351 N.C. 192, 200, 524 S.E.2d 332, 338-39, *cert. denied*, 531 U.S. 867, 148 L. Ed. 2d 110 (2000). In *State v. Ward*, 354 N.C. 231, 555 S.E.2d 251 (2001), this Court considered a line of questioning by the prosecutor similar in effect to those questions at issue here. *Id.* at 253-55, 555 S.E.2d at 266-67. We determined that such questions were properly within the trial court's discretion. *Id.* at 254-55, 555 S.E.2d at 267. The prosecutor there, as here, asked questions to elicit whether a juror would automatically sentence a defendant to death after finding him guilty. *Id.* at 254, 555 S.E.2d at 266. This Court stated,

[T]he trial court did not abuse its discretion in permitting the prosecutor to question prospective jurors in the challenged manner. The questions were designed to determine whether the jurors would refrain from considering punishment until such time, if at all, as they reached the sentencing proceeding. . . . [The prosecutor] merely endeavored to determine whether the

prospective jurors could follow the law and serve as fair and impartial decisionmakers.

*Id.* at 255, 555 S.E.2d at 267.

The Court's reasoning in *Ward* is applicable here. The primary goal of *voir dire* is to seat a jury which will render a fair and impartial verdict at the guilt phase of trial and, if need be, at the sentencing proceeding. *State v. Conaway*, 339 N.C. 487, 511, 453 S.E.2d 824, 839, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). The prosecutor's questions quoted above were a correct statement of the law. They additionally served to ensure that the impaneled jury would consider both punishment alternatives before making a punishment recommendation. Since the questions were well within the bounds of the stated purpose of *voir dire*, the trial court did not abuse its discretion in overruling defendant's objections to this line of questioning. Defendant's argument is without merit.

[5] Defendant's next assignment of error concerns the procedure used during jury selection. Defendant specifically complains that the trial court relieved the State of its statutorily-imposed obligation to pass a full panel of twelve jurors before defendant began his selection. Defendant filed a pretrial motion for individual *voir dire* and sequestration of jurors during *voir dire*. At the hearing on this motion, defense counsel stated: "We would ask for individual *voir dire* on all issues related to jury selection, and not simply pretrial publicity." The trial judge denied the motion but indicated that he would permit individual *voir dire* as to pretrial publicity.

Before jury selection began, the court revisited the issue, and in response to a question by defense counsel, the court informed counsel that jurors would be passed one at a time rather than in a panel of twelve. The first juror questioned by the prosecution was removed for cause. When the next juror was passed by the State, the trial court again revisited the issue of individual *voir dire*. Following discussion among counsel and the court and over defendant's objection, the court ruled that if individual *voir dire* were to continue, then the State would be required to pass only a single juror at a time. Once the State passed an individual juror, defendant was required to pass or challenge that same juror immediately. Thus, individual jurors were passed to defendant rather than a panel of twelve jurors accepted by the State.

Jury selection in criminal cases is controlled by N.C.G.S. § 15A-1214. Subsections (d) through (f) set forth a procedure to be

followed in the majority of cases. In this process the prosecutor must question the jurors, make any challenges desired, and, when satisfied with the twelve in the box, tender a complete panel to the defendant before the defendant conducts any examination. N.C.G.S. § 15A-1214(d) (2003). At that point the defendant has an opportunity to question the jurors and make his challenges. N.C.G.S. § 15A-1214(e). Should the defendant successfully challenge any jurors passed by the State, the clerk calls replacement jurors to fill the empty seats; and the State questions and challenges those replacements until the State again passes a full panel of twelve to the defendant. N.C.G.S. § 15A-1214(f). This process continues until both parties are satisfied with the panel of jurors. *Id.*

The General Assembly has also authorized a trial judge in a capital case to allow individual *voir dire* at his or her discretion. The statute provides, "In capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." N.C.G.S. § 15A-1214(j). Defendant would have this Court hold that the procedural rules from subsections (d) through (f), and in particular the requirement that the prosecutor pass a full panel of twelve jurors to the defendant, apply even where the trial court has used its discretion to order individual *voir dire* pursuant to subsection (j). We decline to so hold.

In interpreting a statute, this Court must first discern the legislative intent in passing the statute. *State v. Buckner*, 351 N.C. 401, 408, 527 S.E.2d 307, 311 (2000). In ascertaining intent, we look first to the plain language of the statute. *State v. Anthony*, 351 N.C. 611, 614, 528 S.E.2d 321, 322 (2000). Where the words of a statute are clear and unambiguous, the words will be given their plain and definite meaning. *State v. Jackson*, 353 N.C. 495, 501, 546 S.E.2d 570, 574 (2001).

Applying these principles of statutory construction, we conclude that subsection (j), applicable only in capital cases, contains a distinct procedure, separate from the mandatory procedure outlined in subsections (d) through (f). As basis we first note the differences between the language used in subsections (d) and (j). Subsection (d) provides, "When the prosecutor is satisfied with the 12 in the box, they must then be tendered to the defendant. Until the prosecutor indicates his satisfaction, he may make a challenge for cause or exercise a peremptory challenge to strike any juror, whether an original or replacement juror." N.C.G.S. § 15A-1214(d). Subsection (j) uses the

phrase "be selected one at a time" and directs that "each juror must first be passed by the State." This language when compared with the language in subsection (d) manifests a clear legislative intent for an alternative method of jury selection under subsection (j).

Additionally, we note that the phrase "be selected" means to be chosen from a number or group, *see Webster's Third New International Dictionary* 2058 (1971), and connotes a completed action. Defendant's interpretation would be more persuasive if the verb in subsection (j) were "examined" rather than "selected." When read in conjunction with the mandate that "each juror must first be passed by the State," the phrase "be selected one at a time" describes the procedure from the calling of the juror to acceptance by both parties. Thus, when the trial court directs individual *voir dire* on all issues pursuant to subsection (j), all parties are required either to accept or reject a juror before the next prospective juror is called. In this case the trial court did not err by not requiring the prosecution to pass a full panel of twelve.

We emphasize that nothing in this holding relative to subsection (j) should be interpreted to infringe upon the trial court's inherent authority to permit individual *voir dire* as to specific sensitive issues in any given case. However, if such questioning is undertaken, the procedure outlined in subsections (d) through (f), including the requirement to pass a complete panel of twelve, must be followed.

Finally, we note that the trial court in this case did not make a specific finding on the record as to the requirement in subsection (j) that good cause be shown. However, inasmuch as defendant did not request such finding when the trial judge indicated that he had reviewed the statute and was satisfied that the procedure was permitted, we presume the trial judge found the necessary "good cause." *See State v. T.D.R.*, 347 N.C. 489, 506, 495 S.E.2d 700, 710 (1998); *Cheape v. Town of Chapel Hill*, 320 N.C. 549, 557, 359 S.E.2d 792, 797 (1987). Defendant's assignment of error is overruled.

Defendant further argues that the improper jury selection procedure violated his constitutional right to a fair and impartial jury. As the State points out, defendant did not raise this constitutional issue at trial; consequently, the trial court did not have the opportunity to consider or rule on this issue. N.C. R. App. P. 10(b)(1). Defendant has accordingly failed to preserve this assignment of error for appellate review. *See State v. Fullwood*, 343 N.C. 725, 733, 472 S.E.2d 883, 887 (1996), *cert. denied*, 520 U.S. 1122, 137 L. Ed. 2d 339 (1997) (holding

that defendant failed to raise a constitutional issue at trial and thus failed to preserve the issue for appellate review).

[6] Next, defendant contends that the trial court erred by failing to intervene *ex mero motu* when prospective juror Penny Stollery revealed during questioning that another unnamed member of the venire had discussed his or her opinions of the case in the jury pool room. Prospective juror Stollery was seated as the twelfth juror in the case. Defendant claims that the trial court's failure to make an inquiry into the content and effect of the remarks by the unidentified juror, or alternatively to strike the panel for the entire day, was plain error. Moreover, defendant asserts that his attorneys' failure to request that the court take such action constituted a violation of his right to effective assistance of counsel.

[7] We note initially that defendant's complaint that the trial court should have made more specific inquiry is not properly before the Court for review. Defendant did not object to this alleged error at trial, and "plain error review is limited to errors in a trial court's jury instructions or a trial court's rulings on admissibility of evidence." *State v. Golphin*, 352 N.C. 364, 460, 533 S.E.2d 168, 230 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). However, defendant has raised the specter of ineffective assistance of counsel. To establish ineffective assistance, a "defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). Accordingly, we consider the possible existence of prejudice.

Juror Stollery told the court that the unidentified member of the venire discussed "[p]rimarily their opinion of what the case was and that they had already established what they felt it was, and what the verdict should be." As defendant points out, contact between a juror and an outside influence may be improper. *See State v. Willis*, 332 N.C. 151, 172-73, 420 S.E.2d 158, 168 (1992); *State v. Barnes*, 345 N.C. 184, 224-25, 481 S.E.2d 44, 66 (1997), *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *and cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). The importance of this principle has been addressed by the United States Supreme Court: "It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment." *Mattox v. United States*, 146 U.S. 140, 149, 36 L. Ed. 917, 921 (1892).

Examination of the record reveals that Juror Stollery came to the jury with an unbiased mind. After her revelation about the comments

made in the general jury pool, Juror Stollery agreed that she could and would put the comments she had heard aside:

> Q: Okay. Is there—is there anything about that—I'm thinking, probably if you mentioned it here, you seem to be the kind of person who is intelligent and large-minded enough and you have a good responsible job, you're an educated lady, *I think you could probably put [those comments] in context*, which would be probably a trash can context, *and not be influenced, am I correct in assuming that, ma'am?*
>
> A: *Yes, you're correct.*

(Emphasis added.) The prosecutor and then defense counsel questioned Juror Stollery about her ability to follow the law, to be impartial, and to consider only the evidence presented in court in making her decisions as a member of the jury. Thus, any damage which might have been done by the exposure to the venire-member's opinions was explored by the attorneys' questions before she was seated on the jury. Moreover, Juror Stollery was the only juror or alternate juror drawn from the panel called for 28 March 2001. As a result, she was the only person who potentially could have been tainted by the unknown venire-member's comments that also could have prejudiced defendant's trial. Since Juror Stollery was thoroughly examined as to her ability to be impartial, defendant was not prejudiced by the trial court's failure to inquire *ex mero motu* into the content and effect of the statements of the unknown prospective juror. By the same reasoning, defendant's claim of ineffective assistance must fail in that counsel's failure to object or to challenge that day's venire was not prejudicial. Defendant's assignments of error on this issue are overruled.

## GUILT-INNOCENCE PHASE

[8] In his next assignment of error, defendant argues that the trial court erred by denying his pretrial motion to sequester witnesses during the guilt phase of trial, made pursuant to Rule 615 of the North Carolina Rules of Evidence. *See* N.C.G.S. § 8C-1, Rule 615 (2003). Defendant contends the denial of his motion allowed members of the victims' family to be present in the courtroom throughout the presentation of testimony at the guilt phase, unduly eliciting the jury's sympathy.

" 'A ruling on a motion to sequester witnesses rests within the sound discretion of the trial court, and the court's denial of the

motion will not be disturbed in the absence of a showing that the [action] was so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Hyde*, 352 N.C. 37, 43, 530 S.E.2d 281, 286 (2000), *cert. denied*, 531 U.S. 1114, 148 L. Ed. 2d 775 (2001) (quoting *State v. Call*, 349 N.C. 382, 400, 508 S.E.2d 496, 507-08 (1998)). Defendant here has failed to demonstrate that the trial court's judgment was so arbitrary that it would constitute an abuse of discretion.

**[9]** Defendant next contends that the trial court violated N.C.G.S. § 15A-943(b) by arraigning him on the same day his trial began and that counsel was ineffective for failing to object to this procedure. Defendant asserts that this error violated his federal and state constitutional rights, but defendant failed to assert these constitutional arguments before the trial court. Hence, these arguments are not properly before this Court for review. N.C. R. App. P. 10(b)(1); *State v. Anderson*, 350 N.C. 152, 175, 513 S.E.2d 296, 310, *cert. denied*, 528 U.S. 973, 145 L. Ed. 2d 326 (1999). We note initially that defendant has not shown whether N.C.G.S. § 15A-943(a) was applicable in Haywood County at the time of his trial. If section 15A-943(a) applies, then section 15A-943(b) provides a criminal defendant with the right not to be tried without his or her consent during the week following arraignment. N.C.G.S. § 15A-943(b) (2003); *see also State v. Shook*, 293 N.C. 315, 319, 237 S.E.2d 843, 846 (1977). However, a defendant must affirmatively assert the right; and when a defendant fails to object, this statutory right is waived, and a defendant is deemed to have implicitly consented for the trial to occur within the week. *See, e.g., id.* at 316, 237 S.E.2d at 845; *State v. Richardson*, 308 N.C. 470, 483, 302 S.E.2d 799, 807 (1983); *State v. Locklear*, 349 N.C. 118, 135, 505 S.E.2d 277, 287 (1998), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999). Defendant's arraignment in this case occurred on 5 April 2001, immediately following jury selection but before opening statements. Defendant did not object. Accordingly, we hold that defendant waived his right to a week's interlude between his arraignment and trial, and the trial court did not err in proceeding to trial immediately.

We additionally note that the record reflects clearly that defense counsel were well-prepared for trial at that time. "Subsection (b) is apparently designed to insure both the [S]tate and the defendant a sufficient interlude to prepare for trial. This is necessary because before arraignment neither the [S]tate nor defendant may know whether the case need proceed to trial." *State v. Shook*, 293 N.C. at

318, 237 S.E.2d at 846. Since the record reveals that defendant's plea was known by both parties well in advance of arraignment, the State and defendant both were aware that trial would proceed. Prejudice does not exist in this situation. A defendant must show prejudice in order to claim successfully ineffective assistance. *See Strickland v. Washington*, 466 U.S. at 687, 80 L. Ed. 2d at 693. Defendant's claim of ineffective assistance is denied.

**[10]** Defendant's next assignment of error asserts that his trial counsel provided ineffective assistance in violation of the Sixth Amendment during opening arguments. Specifically, defendant complains that his counsel made the following acknowledgments:

> Lippard brings Watt to that trailer looking for drugs. They are hoping that Charles and Stout may have some drugs. But they don't. And so, Lippard says, "Let's rob some drug dealers. I've got a gun; let's head out and rob some drug dealers."
>
> All four boys piled into Chad Watt's car and headed out. And the car breaks down in a rural area of Alexander County.
>
> Watt starts to argue with Charles about why this car is not running. They go back and forth and the argument turns violent and Charles starts to fight with Watt and Lippard joins and turns on his buddy, Watt, and joins Charles in beating Watt, and then Stout joins in beating Watt. They beat Watt badly. And then Charles shoots Watt in the head. It's not a fact that will change. Lippard shoots Watt in the head. And they bury that boy on the bank of the creek under a tree and they leave him there to rot.

Defendant also objects to his counsel calling the crimes against the Phillips family "brutal," as well as the following statement:

> This is a series of drunken, chain reactions, and Charles was reacting to the situation. And he's at the foot of Earl Lane with a choice. And he hears Lippard scream, "Charles, get him off me, he's going to kill me, Charles! Don't leave me, Charles!" And Charles makes the wrong choice.

Defendant claims that counsel, by making these statements, violated his right to effective assistance of counsel in that: (i) he admitted the murder of Watt before the trial court had the chance to rule on defendant's motion to suppress this crime; (ii) he conceded that defendant was involved in a conspiracy to commit armed robbery; (iii) he acknowledged an aggravating circumstance by admitting the

murder was "brutal"; and (iv) he undermined the trial strategy now claimed by defendant, namely, that defendant lacked the capability to make rational choices about his actions on the night in question.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell,* 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). In order to meet this burden, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687, 80 L. Ed. 2d at 693. Both prongs of this test must be demonstrated in order to claim successfully ineffective assistance of counsel. *Id.*

Defendant makes four distinct claims of ineffective assistance in this case. After considering each in turn, we conclude that defendant has not made the required showing that counsel's performance was constitutionally deficient under the *Strickland* analysis as to any claim.

Counsel for defendant acknowledged the murder of Chad Watt, a murder for which defendant was not on trial, in his opening statement. He did so despite the fact that the trial court had deferred a decision on defendant's motion to suppress evidence regarding this event until the State intended to use such evidence. Defendant claims counsel's acknowledgment eliminated the possibility that evidence on the Watt murder would be excluded and potentially prejudiced the jury against defendant through use of the language "leave him [Watt] there to rot."

This Court has held that "[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. Fletcher,* 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), *cert. denied,* 537 U.S. 846, 154 L. Ed. 2d 73 (2002); *see also State v. Prevatte,* 356 N.C. 178, 236, 570 S.E.2d 440, 472 (2002), *cert. denied,*

—— U.S. ——, 155 L. Ed. 2d 681 (2003). Moreover, this Court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct. *State v. Fisher*, 318 N.C. 512, 532, 350 S.E.2d 334, 346 (1986). As the United States Supreme Court has stated,

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . .

*Strickland v. Washington*, 466 U.S. at 689, 80 L. Ed. 2d at 694.

Defense counsel's admission of Watt's murder in this case was not an unreasonable trial strategy. This Court has previously held that counsel may reasonably reveal facts during opening arguments which will come out later at trial in an effort to lessen their impact when they are revealed. *State v. Strickland*, 346 N.C. 443, 455, 488 S.E.2d 194, 201 (1997), *cert. denied*, 522 U.S. 1078, 139 L. Ed. 2d 757 (1998). Defense counsel's choice to attempt to lessen the sting of the Watt murder by previewing it for the jury in his opening statement was reasonable given the likelihood that this evidence would be admitted. The same trial judge had previously admitted evidence of Watt's murder in Lippard's trial. The Watt murder occurred forty-eight hours before the crimes for which defendant was on trial. Defendant and Lippard's attempt to flee from North Carolina after Watt's murder was the reason for their presence in Haywood County. Thus, under this Court's holding in *State v. Agee*, 326 N.C. 542, 547-48, 391 S.E.2d 171, 174 (1990), the evidence of Watt's murder was admissible to show the chain of circumstances leading to the five murders for which defendant was being tried, subject only to Rule 403 balancing by the trial court. Furthermore, the prosecution had signaled in its opening statement and in its opposition to defendant's motion *in limine* that the prosecution intended to introduce evidence of the Watt murder just as it had at Lippard's trial. Under these circumstances, notwithstanding the trial court's deferral of its ruling on the pretrial motions, defense counsel's decision to mitigate the effect of the prior bad act preemptively was acceptable trial strategy under *Strickland v. Washington*.

Counsel's opening statement for defendant also informed the jury that defendant participated in a plan with Lippard, Watt, and another man to rob drug dealers. This fact arguably could be sufficient to convict defendant of conspiracy to commit armed robbery. *See* N.C.G.S. § 14-87 (2003) (defining armed robbery); *State v. Gell,* 351 N.C. at 209, 524 S.E.2d at 343 (defining criminal conspiracy as "an agreement, express or implied, between two or more persons, to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means"). This showing alone, however, is insufficient to establish that counsel's performance was deficient.

The decision to tell the jury about this conduct was a reasonable strategy in that it merely forecast the evidence the jury would hear later in trial. In defendant's statement to police, he flatly stated, "I had a sawed-off, 20 gauge, single shot, shotgun with me. . . . Chad wanted to buy one-half ounce of marijuana and I was going to take him to some Spanish drug dealers I knew. We were going to rob them and neither Chris nor Chad had a gun." This Court has held that a counsel's statement of a fact strongly suggesting guilt of a crime does not necessarily amount to an admission of legal guilt. *State v. Strickland,* 346 N.C. at 454, 488 S.E.2d at 200. This distinction is critical where, as here, a defendant has not been indicted for the crime about which the attorney makes factual concessions. Therefore, counsel's description to the jury of defendant's actions did not constitute ineffective assistance even though it potentially could have been sufficient to prove guilt of a crime.

Defense counsel also stated in opening arguments that "the best evidence that [the State] will present came from [defendant] less than forty-four hours after this *brutal* crime." (Emphasis added). Defendant now contends that the use of the word "brutal" in this sentence amounts to an admission of an aggravating circumstance, presumably N.C.G.S. § 15A-2000(e)(9), that "[t]he capital felony was especially heinous, atrocious, or cruel." We disagree. Describing a murder as "brutal" does not satisfy the legal standard in the (e)(9) aggravator that the capital felony was "heinous, atrocious, or cruel," much less "especially" so. This Court has held that for purposes of the e(9) aggravator, the murder must exhibit "brutality exceeding that which is normally found in first-degree murder." *State v. Quick,* 329 N.C. 1, 32, 405 S.E.2d 179, 198 (1991); *see also State v. Stanley,* 310 N.C. 332, 335-37, 312 S.E.2d 393, 395-97 (1984). Defense counsel did not concede the existence of the (e)(9) aggravating circumstance merely by calling the murder "brutal," and defendant's claim that his

attorney's characterization of the killing constituted ineffective assistance is without merit.

Defendant further contends that counsel undermined his diminished capacity defense in stating that defendant made "the wrong choice" by going back up Earl Lane to assist Lippard, an act which led ultimately to the killing of Eddie, Mitzi, and Katie Phillips. The planned diminished capacity defense, according to defendant, had two different aspects: (i) that Lippard rather than defendant was the leader of the crime spree, and (ii) that defendant's use of drugs and alcohol during the spree in combination with his pre-existing mental state provided reasonable doubt about defendant's ability to premeditate and deliberate. Using these two propositions, defendant hoped to convince the jury that he was only guilty of second-degree murder.

This statement by counsel did not refute defendant's planned trial strategy to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. at 687, 80 L. Ed. 2d at 693. As we have noted, this Court generally declines to question a party's trial strategy. *State v. Prevatte*, 356 N.C. at 236, 570 S.E.2d at 472 ("Decisions concerning which defenses to pursue are matters of trial strategy and are not generally second-guessed by this Court."). Moreover, the comment at issue here was merely one brief statement in an exhaustive opening argument.

Diminished capacity is a means of negating the "ability to form the specific intent to kill required for a first-degree murder conviction on the basis of premeditation and deliberation." *State v. Page*, 346 N.C. 689, 698, 488 S.E.2d 225, 231 (1997), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651 (1998). The ability to choose is not necessarily inconsistent with a diminished capacity defense in that the mere decision to commit an act does not satisfy the test for specific intent. *See State v. Keel*, 333 N.C. 52, 58, 423 S.E.2d 458, 462 (1992) (holding that "the State must show more than an intentional act by the defendant" in order to prove specific intent).

The comment at issue here was merely one brief statement in an exhaustive opening statement. Viewed in light of the definition of diminished capacity, this statement that defendant "made the wrong choice" by no measure suggested that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. at 687, 80 L. Ed. 2d at 693. We hold that nothing in counsel's opening statement alleged by defend-

ant to be ineffective assistance amounts to the constitutionally deficient performance required by *Strickland v. Washington*, for ineffective assistance of counsel.

Defendant further contends that the four statements complained of from his counsel's opening argument amounted to *per se* ineffective assistance under this Court's analysis in *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986). In *Harbison*, this Court granted the defendant a new trial based on closing arguments by his attorney. *Id.* at 180-81, 337 S.E.2d at 507-08. In that case, the defendant maintained throughout his trial that he had acted in self defense. *Id.* at 177, 337 S.E.2d at 506. Trial counsel had adhered to that defense during the presentation of evidence by the State and the defense. *Id.* One of the defendant's attorneys continued to use that theory during his closing argument, but the defendant's other attorney expressed his personal opinion that the defendant should not be acquitted on the theory of self defense but should be convicted of manslaughter rather than first-degree murder. *Id.* at 177-78, 337 S.E.2d at 506. The defendant expressly alleged that he had not endorsed this change in theory. *Id.* at 177, 337 S.E.2d at 505. This Court in *Harbison* stated that "when counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Id.* at 180, 337 S.E.2d at 507. The Court specifically held that the attorney's concession of guilt without the consent of his client amounted to *per se* ineffective assistance. *Id.* at 180, 337 S.E.2d at 507-08.

Despite defendant's contention that each of the four statements he objects to from his counsel's opening statement could be *per se* ineffective assistance, the only statement to which *Harbison* is arguably applicable is counsel's alleged admission of Watt's murder. Even this statement, though, is distinguishable from the acts of the defendant's counsel in *Harbison*. The act in *Harbison* that this Court found merited a new trial was counsel's admission of legal guilt as to the crime for which the defendant had been indicted and for which the defendant was being tried. In the instant case, defendant gave counsel written permission to admit the murders of Eddie, Mitzi, and Katie Phillips, but he did not explicitly authorize counsel to discuss the Watt murder. The murder of Watt, however, unlike the Phillips' murders, was not at issue in this trial; therefore, this defendant was not harmed in the same manner as the defendant in *Harbison*. Accordingly, defendant's counsel's admission of Watt's murder does

not rise to the level of the act condemned by this Court in *Harbison*. We decline to find *per se* ineffective assistance of counsel and overrule defendant's assignment of error.

**[11]** As his next argument, defendant asserts that the trial court abused its discretion by allowing the State to introduce five pieces of evidence: (i) a videotape of the crime scene; (ii) photographs of Chad Watt; (iii) specific statements by defendant; (iv) Bart Long's speculation; and (v) the testimony of Connie Millsaps. Defendant contends that this evidence was unduly prejudicial and was admitted in violation of Rule 403 of the North Carolina Rules of Evidence and in violation of defendant's constitutional right to a fair trial.

Initially, we note that defendant failed to raise constitutional error at the trial court for any of the five pieces of evidence he contends were inappropriately admitted. Thus, defendant's constitutional arguments have not been preserved for appellate review. *State v. Call*, 349 N.C. at 410, 508 S.E.2d at 514; *see* N.C. R. App. P. 10(b)(1).

The general rule regarding admission of evidence is that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly, or by [the Rules of Evidence]." N.C.G.S. § 8C-1, Rule 402. The Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401. Further, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403. The decision whether to exclude evidence under Rule 403 of the Rules of Evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *See State v. Williams*, 334 N.C. 440, 460, 434 S.E.2d 588, 600 (1993), *judgment vacated on other grounds*, 511 U.S. 1001, 128 L. Ed. 2d 42 (1994); *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

Having laid out the rules of law which bear upon all five pieces of evidence questioned by defendant, we now turn to consider the

admission of each item individually. Defendant first complains about State's Exhibit 143, a videotape of the crime scene admitted by the State during its case in chief.

This Court has stated that it looks to the law on photographic evidence in determining the admissibility of videotapes. *State v. Kandies*, 342 N.C. 419, 444, 467 S.E.2d 67, 80, *cert. denied*, 519 U.S. 894, 136 L. Ed. 2d 167 (1996). Defendant contends that the videotape in question was repetitive of photographs exhibited by the State as well as the testimony of witnesses for the State. This Court has ruled previously that even when a photograph is admissible, " 'the admission of an excessive number of photographs depicting substantially the same scene may be sufficient ground for a new trial when the additional photographs add nothing in the way of probative value but tend solely to inflame the jurors.' " *State v. Hennis*, 323 N.C. at 284, 372 S.E.2d at 527 (quoting *State v. Mercer*, 275 N.C. 108, 120, 165 S.E.2d 328, 337 (1969), *overruled in part on other grounds by State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975)). However, " '[p]hotographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Goode*, 350 N.C. 247, 258, 512 S.E.2d 414, 421 (1999) (quoting *State v. Hennis*, 323 N.C. at 284, 372 S.E.2d at 526).

The videotape was taken by State Bureau of Investigation Agent Andy Cline the night of the murders before the site was processed by police officers. The videotape graphically depicted the crime scene, including the bodies of the five victims, pools of blood surrounding the victims, and the blood spatter on various surfaces in the house. The scenes shown in the videotape illustrated the crime scene encountered by police officers at the Phillips' home as described by Investigator Cline and other witnesses. The videotape provided a unique perspective into the layout of the area in question that the still photographs admitted into evidence did not depict. Specifically, the videotape was helpful in understanding the locations of the bodies in relation to the houses at the crime scene. Additionally, the tape revealed a long shotgun found near Eddie Phillips' body which was not revealed in any other photograph admitted into evidence.

The trial court admitted the videotape over defendant's objection after a hearing outside the presence of the jury during which the trial judge carefully considered the arguments of both the State and defendant. Additionally, the trial court gave a limiting instruction to

the jury before it viewed the videotape, instructing it to consider the videotape only for the purpose of illustrating Investigator Cline's testimony. The record reflects that the videotape was not used excessively or solely to inflame the passions and prejudices of the jury against defendant. In light of the distinctive perspective that the videotape afforded and the limiting instruction given by the trial court, *see State v. Kandies*, 342 N.C. at 444, 467 S.E.2d at 80 (holding that a similar limiting instruction diminished the likelihood of unfair prejudice towards the defendant), we are unable to say that the trial court abused its discretion in admitting the videotape of the crime scene. We overrule this assignment of error.

Defendant also argues that the trial court abused its discretion by admitting into evidence photographs of Chad Watt's body taken after its location by Chief Deputy Hayden Bentley of the Alexander County Sheriff's Department, labeled State's Exhibits 82 and 83. The law governing admission of these photographs is identical to that outlined above governing the admission of videotapes.

Defendant's contention that these photographs had no probative value in this trial is misplaced. Defendant did not contest the admissibility of Deputy Bentley's testimony concerning the discovery of Chad Watt's body, and the photographs illustrated that testimony. Moreover, the photographs lent credibility to defendant's confession and helped to demonstrate the circumstances and chain of events leading to the crimes for which defendant was being tried. Contrary to defendant's contention, the trial court was not required to make findings of fact in balancing the prejudicial effect and probative value of the evidence under Rule 403 of the North Carolina Rules of Evidence. By admitting the photographs, the trial court implicitly determined that any undue prejudice resulting from the admission of the photographs was substantially outweighed by their probative value. The trial court did not abuse its discretion, and this assignment of error is rejected.

Defendant next assigns error to the trial court's allowing into evidence the testimony of two witnesses recounting statements made by defendant. Rule 801(d) of the North Carolina Rules of Evidence makes an exception to the general rule of exclusion for hearsay evidence: "A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is (A) his own statement, in either his individual or a representative capacity. . . ." N.C.G.S. § 8C-1, Rule 801(d). However, even admissions of statements pursuant to Rule 801(d) are subject to the Rule 403 balancing of undue prejudice

against probative value. *See, e.g., State v. Lambert*, 341 N.C. 36, 50, 460 S.E.2d 123, 131 (1995). Defendant contends that the prejudicial impact of the two statements outweighed any probative value they might have had.

Lisa Adams testified that defendant, during a telephone call from jail, stated that he did not keep running from police because "he would kill more people." Defendant contends this remark prejudiced him in that it predisposed the jury to infer that defendant would kill again if given the chance. Additionally, the trial court, after a hearing to address defendant's objection, permitted Special Agent Umphlet to testify as to the contents of a statement made by defendant on 3 October 1999. The specific sentences to which defendant objected read as follows: "When I shot that guy [Chad Watt], it f—— with my mind. They say after you kill the first time, the others are easy and that's true." Defendant contends that this testimony prejudiced him in the same way as Adams' testimony, by raising the specter of his future dangerousness. Nonetheless, these remarks have significant probative value in light of the State's burden of proving premeditation and deliberation. *See State v. Davis*, 325 N.C. 607, 628, 386 S.E.2d 418, 429 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). In this case where the main defense presented was that defendant lacked the mental capacity to form the requisite specific intent for first-degree murder, any evidence bearing on defendant's state of mind when he killed has substantial probative value. More than the potential for future dangerousness, defendant's statements permit the inference that killing gave him a thrill or "high." Thus, these statements were relevant to defendant's defense of diminished capacity. Accordingly, the trial court did not abuse its discretion in admitting Adams' and Special Agent Umphlet's testimony.

Bart Long testified at defendant's trial on behalf of the State about defendant and Lippard assaulting him in a rest area in McDowell County. During the course of defendant's cross-examination of Long, Long stated, "[Defendant] was the aggressor; he was the one who would have killed me if he could have." Defendant contends that the trial court abused its discretion under Rule 403 by overruling his objection to this statement and denying his motion to strike it.

Rule 701 of the North Carolina Rules of Evidence allows for opinion testimony by a non-expert witness where the opinion is based on the witness' perception and is helpful to the jury. N.C.G.S. § 8C-1, Rule 701. This Court has interpreted this rule to allow evidence which

"can be characterized as a 'shorthand statement of fact,' " *State v. Braxton*, 352 N.C. at 187, 531 S.E.2d at 445 (quoting *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975), *judgment vacated on other grounds*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976)). In this case Long's statement was properly admissible as a shorthand restatement of Long's perception at the time of the attack that defendant was the aggressor and would have done Long severe bodily harm. We cannot say that the trial court abused its discretion by admitting this statement into evidence.

Finally, defendant argues that the trial court committed plain error by failing to intervene *ex mero motu* to prevent the State from questioning Connie Millsaps, one of Eddie and Mitzi Phillips' daughters. Defendant further contends that his attorneys provided constitutionally deficient assistance by failing to object to this testimony. We reject these assertions.

Defendant's assignment of error fails under Rule 10(c)(1) of the Rules of Appellate Procedure, which requires that "an assignment of error . . . direct[] the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." N.C. R. App. P. 10(c)(1). The assignment of error submitted by defendant refers this Court to the entirety of Millsaps' testimony rather than to any particular portions of her testimony. This broad brush approach fails to distinguish between those parts of Ms. Millsaps' testimony that are relevant to the crimes from those parts dealing with personal matters about the family. When read as a whole, much of Millsaps' testimony connects defendant to the crime. For example, Millsaps identified Mitzi Phillips' Saturn automobile in a photograph and Mitzi and Katie's purses found in the Saturn. Millsaps also testified to conditions at her parents' home shortly before the crime as compared with the crime scene after the murders. We are unable to undertake meaningful review of defendant's challenges to Millsaps' testimony, and we cannot conclude that the mere fact that Millsaps testified was so inflammatory as to constitute error. The trial court did not abuse its discretion in admitting any of these five pieces of evidence at issue. Moreover, inasmuch as defendant made no objection based on violation of his federal or state constitutional rights before the trial court, any assignment of error premised on a constitutional violation is not properly before this Court for review. *State v. Anderson*, 350 N.C. at 175, 513 S.E.2d at 310.

Neither did defendant's counsel's failure to object to Millsaps' testimony constitute ineffective assistance. As noted above, the presumption favors the appropriateness of counsel's actions at trial. *State v. Fisher*, 318 N.C. at 532, 350 S.E.2d at 346. "Counsel is given wide latitude in matters of strategy," *State v. Fletcher*, 354 N.C. at 482, 555 S.E.2d at 551, and defense counsel in this case could well have feared alienating the jury by appearing callous toward Millsaps—the victims' daughter, granddaughter, and sister. This assignment of error is rejected.

**[12]** Defendant's next assignment of error pertains to the trial court's exclusion of proffered Defense Exhibits 34 and 35 consisting of excerpts from the State's arguments to the jury in Lippard's trial in which the prosecutor avowed that Lippard committed the murders of Earl and Cora Phillips. Defendant contends that statements made by prosecutors in Lippard's trial amounted to admissions of a party opponent admissible as evidence in this trial pursuant to N.C.G.S. § 8C-1, Rule 801(d). According to defendant, the exclusion of these proffered exhibits violated the North Carolina Rules of Evidence and infringed on defendant's constitutional right to present a defense and receive a fair trial. We disagree.

This Court has considered and rejected a claim identical in relevant part to this one in *State v. Collins*, 345 N.C. 170, 478 S.E.2d 191 (1996). Defendant has presented us with no material distinction between these cases. We decline to revisit the issue of the admissibility of an attorney's arguments from a prior case, even where the State is prosecuting a second defendant for identical crimes; "it is axiomatic that the arguments of counsel are not evidence." *Id.* at 173, 478 S.E.2d at 193. Moreover, since the district attorney's arguments from the Lippard trial are inadmissible, defendant's constitutional argument also fails. The assignment of error is overruled.[1]

**[13]** Defendant next suggests that the trial court erred by overruling defendant's objection to Investigator Bill Sterrett's testimony that defendant did not answer a question about the location of his partner in crime shortly after his arrest. Defendant contends that this testimony violated defendant's constitutional rights by using his post-arrest silence to his disadvantage. Further, defendant argues that his attorney's failure to raise constitutional grounds for the objection was ineffective assistance in violation of the Sixth Amendment.

1. Defendant also raises an assignment of error concerning the trial court's repeated exclusion of this same evidence at the sentencing proceeding. We address this issue below.

The testimony about which defendant is concerned reads as follows:

Q. Did—tell members of the jury what you, what you noticed about the physical appearance of Mr. Roache?

A. When I entered Lieutenant Phillips['] patrol car, I identified myself as a law enforcement officer of Haywood County Sheriff's office. And direct[ed] essentially one question to Mr. Roache [which] was where is your partner? We are concerned about him and we think he may be injured and we need to know where he is.

Mr. Roache ch—

[DEFENSE COUNSEL]: Objection. We've never been provided this in discovery, Your Honor.

[PROSECUTOR]: Well, did he answer, and say anything?

A. He said nothing.

[THE COURT]: Overruled.

[PROSECUTOR]: Okay. So, tell us then, would that being the interaction, or tell us what you noticed about his appearance?

A. It might be that he was scared.

Q. Did you notice anything about his complexion? His eyes?

A. Stone-faced; motionless.

Q. Anything unusual about his eyes?

A. I have no recollection.

Q. Anything unusual about his complexion?

A. I have no recollection of that.

Q. Did you smell any odor about him?

A. No, I did not.

Q. Do you have—do you have an opinion, Mr. Sterrett, based upon your observation and your experience in law enforcement, as to whether Mr. Roache was intoxicated on alcohol at that time?

A. I can't render an opinion on that because I wasn't with him long enough to observe as to his sobriety.

Q. Well, you know a drunk man when you see one, don't you, sir?

A. Well, I realize that. But I smelled no strong odor of alcohol around his person and that he would not communicate with me, so I can't comment on his speech.

Q. Well, I'm not asking you about his speech. I'm talking about his ah, the way he looked, the way he acted—he was awake, wasn't he?

A. He was awake. What I noticed was he was stone-faced; he would not communicate with me; he was looking straight ahead and would not respond to my question.

Q. Do you have an opinion as to whether he was drunk?

A. No—

Q. Sir?

A. No, sir.

[DEFENSE COUNSEL]: Objection. Asked and answered.

[THE COURT]: Wait just a moment. The objection is sustained.

[PROSECUTOR]: Are you saying you don't have an opinion?

[THE COURT]: The objection is sustained.

The wording and context of counsel's objection coupled with his failure to object to another mention of defendant's silence makes it clear that his objection was based on a concern about incomplete discovery rather than constitutional error. Constitutional arguments not raised at trial are not preserved for appellate review. *State v. Call,* 349 N.C. at 410, 508 S.E.2d at 514; *see* N.C. R. App. P. 10(b)(1).

We also reject defendant's claims of ineffective assistance rising from this exchange because defendant has shown no prejudice. Defendant contends the jury may have discounted his claim of diminished capacity by inferring from Investigator Sterrett's testimony that defendant had sufficient possession of his mental faculties to know not to speak to law enforcement officers. Such an inference would be supported had Investigator Sterrett testified that defendant was sober. Investigator Sterrett mentioned defendant's silence only in

passing; more significant was his steadfast refusal, despite prompting, to state an opinion as to defendant's sobriety. In this context the likelihood that the passing references to defendant's silence prejudiced defendant's diminished capacity defense is *de minimus*. The State did not argue that defendant's silence implied undiminished mental capacity or otherwise seek to take advantage of this testimony. Moreover, in light of testimony regarding defendant's later efforts to assist law-enforcement officers in locating his co-defendant, as well as the overwhelming evidence of guilt supplied by his extensive confessions to police, defendant has not shown that but for Investigator Sterrett's isolated remarks a reasonable probability exists that the result of the proceeding would have been different. In context this testimony would not have "undermine[d] confidence in the outcome" of defendant's trial. *Strickland v. Washington,* 466 U.S. at 694, 80 L. Ed. 2d at 698. Thus, defendant's ineffective assistance of counsel claim must fail. This assignment of error is overruled. .

**[14]** Defendant by his next assignment of error contends that the trial court erred by denying his pre-trial motion to suppress evidence concerning defendant's attempted robbery of Bart Long. The transcript, however, reflects that the court actually deferred ruling on the motion until such time as the State attempted to introduce evidence on the subject. The State called Bart Long as a witness on the second day of trial to testify about his experience at the rest stop. At that time, defendant did not object to Long's testimony. This Court has held that

> a motion *in limine* is not sufficient to preserve for appeal the question of admissibility of evidence if the defendant does not object to that evidence at the time it is offered at trial. We have also held that a pretrial motion to suppress, a type of motion *in limine*, is not sufficient to preserve for appeal the issue of admissibility of evidence.

*State v. Grooms,* 353 N.C. 50, 65-66, 540 S.E.2d 713, 723 (2000) (citations omitted), *cert. denied,* 534 U.S. 838, 151 L. Ed. 2d 54 (2001). Defendant has neither assigned nor argued plain error as to the admission of this evidence. Hence, this issue is not properly before the Court. *Id.* Moreover, at the time that the State introduced Long's testimony, defendant had already given a detailed description of the attempted robbery during his opening statement. As a result, even if defendant had objected to this evidence, he would be unable to show prejudice. Defendant's argument has no merit.

STATE v. ROACHE

[358 N.C. 243 (2004)]

[15] Defendant's next assignment of error alleges that the trial court erred by refusing to allow Lisa Adams, a former co-worker of defendant's, to testify that she believed that defendant was covering for Lippard. This assignment of error is without merit. During defendant's cross-examination of Adams, the following dialogue occurred:

Q. Is it your feeling that Lippard was probably in charge of this?

A. I think so.

Q. I think you also told me that you thought that Charles was covering for Lippard?

[PROSECUTOR]: Objection.

[THE COURT]: Let me hear—let me hear that question again.

[DEFENSE COUNSEL]: Do you feel like Charles was covering for Lippard, isn't that right, is that what you told him?

A. I don't know whether—

[PROSECUTOR]: Objection.

[THE COURT]: Wait just a minute. Sustained as to what she felt like.

[DEFENSE COUNSEL]: You did tell me that Charles was covering for Lippard?

[PROSECUTOR]: Objection.

[THE COURT]: Sustained.

Defendant made no further offer of proof as to what Adams' testimony would have been. Defendant now claims that the trial court violated the Rules of Evidence and infringed defendant's constitutional rights through its refusal to allow the witness to answer the questions quoted above. Defendant also contends that defense counsel's failure to proffer Adams' testimony amounted to ineffective assistance of counsel.

The defense claims specifically that Adams was competent to offer her opinion under Rule 701 of the North Carolina Rules of Evidence. This rule provides that a non-expert witness' "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.G.S. § 8C-1, Rule 701. As

noted above, this Court has interpreted this rule to allow evidence which "can be characterized as a 'shorthand statement of fact,'" *State v. Braxton*, 352 N.C. at 187, 531 S.E.2d at 445 (quoting *State v. Spaulding*, 288 N.C. at 411, 219 S.E.2d at 187), or, in other words, the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time," *State v. Spaulding*, 288 N.C. at 411, 219 S.E.2d at 187 (quoting *State v. Skeen*, 182 N.C. 844, 845-46, 109 S.E. 71, 72 (1921)). The type of opinion to which Adams allegedly would have testified is not such a "shorthand statement of fact," for the reason that it was not rationally based on her perception. Adams testified that she worked with defendant for six months approximately one and a half years before the murders of the Phillips family and that she had received three phone calls from defendant after he was arrested for these crimes. Testimony about a defendant's motivation for confessing to a crime—where, as here, the opinion is based on a telephone conversation and a prior relationship with a defendant—is beyond the purview of Rule 701.

Defendant's claims of constitutional error and ineffective assistance of counsel are flawed. Defendant did not argue the constitutional issue at trial. Hence, not having raised the constitutional arguments at trial, defendant has not preserved the arguments for appellate review. *State v. Call*, 349 N.C. at 410, 508 S.E.2d at 514; *see* N.C. R. App. P. 10(b)(1). Moreover, defendant's claims of ineffective assistance must fail. This witness was not competent to testify as to whether defendant was covering for Lippard. The evidence was not admissible pursuant to N.C.G.S. § 8C-1, Rule 701. Therefore, counsel's failure to proffer the witness's answers was not prejudicial. Defendant's assignment of error is accordingly overruled.

[16] In his next assignment of error, defendant contends that the trial court erroneously prevented him from presenting specific testimony from three witnesses: (i) Thomas Glove, a former convict who had been in jail with defendant in 1996 and had later spoken with him about the events in this case; (ii) Fern Absher, a retired speech pathologist who worked with defendant in elementary and middle school; and (iii) Bonnie Treadway, defendant's mother. Defendant claims the excluded testimony from these three witnesses would have corroborated the testimony of his expert witness, Dr. Claudia Coleman, that defendant's actions on the night of the Phillips' murders were the result of diminished capacity based on the traumatic

environment in which he was raised and his alcohol and drug use before the murders. Defendant believes that the exclusion of the evidence in question violated the Rules of Evidence as well as his constitutional rights.

Glove gave an offer of proof stating that defendant told him he had been drinking and using drugs for several days at the time he committed the Phillips' murders. Glove also would have testified that defendant said "something snapped" before he shot Eddie Phillips. Defense counsel at trial did not make an offer of proof as to Absher's or Treadway's testimony. Defendant now contends Absher would have testified as to what defendant told her about his home environment when he worked with her as a child. Similarly, defendant asserts that Treadway would have testified about her husband's harsh behavior while defendant was a child. Defendant claims that his attorney's failure to make an offer of proof as to the content of Absher's and Treadway's excluded testimony was ineffective assistance.

The testimony of Glove and Absher was correctly excluded as inadmissible hearsay. Hearsay is defined by statute as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c). "Hearsay is not admissible except as provided by statute or by these rules." N.C.G.S. § 8C-1, Rule 802. Defendant contends this testimony was properly admissible on the basis that "[p]rior consistent statements made by a witness are admissible for purposes of corroborating the testimony of that witness, if [they do] in fact corroborate his testimony." *State v. Holden*, 321 N.C. at 143, 362 S.E.2d at 526. This argument is misplaced. As we have previously stated, the rule " 'does not justify admission of extrajudicial declarations of someone other than the witness purportedly being corroborated.' " *State v. Murillo*, 349 N.C. 573, 587, 509 S.E.2d 752, 760 (1998) (quoting *State v. Hunt*, 324 N.C. 343, 352, 378 S.E.2d 754, 759 (1989)), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999). Glove and Absher's attempted testimony would have constituted an inappropriate use of the corroboration rule since their testimony did not relate to prior statements of Dr. Coleman, but rather to those of defendant. Thus, Glove and Absher's statements were appropriately excluded, and defendant's assignment of error is overruled as to those witnesses.

Bonnie Treadway testified at great length on defendant's behalf; defendant's objection pertains only to seven questions in Treadway's

extensive testimony. These questions related to only three different topics: the way her husband treated her in defendant's presence, the circumstances which drove her to leave defendant with his father, and the way her husband treated defendant's sister. Under the Rules of Evidence, evidence which is not relevant is not admissible. N.C.G.S. § 8C-1, Rule 402. The testimony defendant alleges Treadway would have given is so tenuously related to the issue of defendant's diminished capacity that it cannot be said to be "relevant" under Rule 401. The trial court properly excluded Treadway's testimony as to these three subjects. This assignment of error is overruled.

**[17]** Defendant's next argument pertains to two assignments of error. Defendant first suggests that the State repeatedly posed improper questions on cross-examination of defendant's witnesses, amounting to structural error. Second, defendant claims that the trial court erred by failing to intervene *ex mero motu* to prevent the prosecutor from making certain statements during closing argument. Defendant contends these arguments were more prejudicial because of the alleged improper questioning of witnesses by the State. Furthermore, defendant argues that his trial counsel provided ineffective assistance by failing to object to these arguments or to request a mistrial.

The trial court sustained defendant's objections to the questions specifically addressed by defendant in his brief to this Court. This Court will not review the propriety of questions for which the trial court sustained a defendant's objection absent a further request being denied by the court. *State v. Fleming*, 350 N.C. 109, 140, 512 S.E.2d 720, 741, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). No prejudice exists, for when the trial court sustains an objection to a question the jury is put on notice that it is not to consider that question. *State v. Carter*, 342 N.C. 312, 324, 464 S.E.2d 272, 280 (1995), *cert. denied*, 517 U.S. 1225, 134 L. Ed. 2d 957 (1996). Accordingly, any error alleged by defendant to result from these questions is not properly before the Court, and regardless would not have resulted in prejudice.

Defendant makes seven distinct allegations regarding the prosecutor's closing argument at the guilt-innocence phase of trial. Inasmuch as defendant failed to object at trial, the standard of review for all defendant's contentions is as follows:

> Where a defendant fails to object to the closing arguments at trial, defendant must establish that the remarks were so grossly improper that the trial court abused its discretion by failing to

intervene *ex mero motu.* "To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *See State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999).

*State v. Grooms*, 353 N.C. at 81, 540 S.E.2d at 732; *see also State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999). Additionally, "special attention must be focused on the particular stage of the trial. Improper argument at the guilt-innocence phase, while warranting condemnation and potential sanction by the trial court, may not be prejudicial where the evidence of defendant's guilt is virtually uncontested." *State v. Jones*, 355 N.C. 117, 134, 558 S.E.2d 97, 108 (2002).[2] Thus, to demonstrate reversible error defendant must show that the prosecutor's guilt-innocence phase closing remarks were so grossly improper as to have infected the trial with fundamental unfairness.

[18] We now turn to an individual consideration of each disputed argument. The first comment about which defendant raises concern was the prosecutor's statement that "[defendant and Lippard] packed up like wild dogs—they were high on the taste of blood and power over their victims. And just like wild dogs, if you run with the pack you are responsible for the kill." This Court does not condone comparisons between defendants and animals. *See, e.g., State v. Jones*, 355. N.C. at 133-34, 558 S.E.2d at 107-08. However, as defendant acknowledges, this Court has approved a similar argument in *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995). In *Goode* the prosecutor stated, " 'he who runs with the pack is responsible for the kill.' " *Id.* at 546-47, 461 S.E.2d at 650-51. The Court held that where a prosecutor uses this argument in a noninflammatory manner to illustrate the acting in concert doctrine, the argument is not improper. *Id.*

Although the prosecutor in this case utilized this analogy to illustrate the law on aiding and abetting and acting in concert, this argument, unlike the argument in *Goode*, went beyond noninflammatory remarks. By characterizing defendant and his accomplice as wild dogs "high on the taste of blood and power over their victims," the prosecutor "improperly [led] the jury to base its decision not on the evidence relating to the issue submitted, but on misleading charac-

2. We note that this case was tried prior to our decision in *State v. Jones*, 355 N.C. 117, 558 S.E.2d 97. However, *Jones* did not recognize new requirements as to the permissible scope of closing arguments but merely reiterated principles of law long followed by this Court.

terizations, crafted by counsel, that are intended to undermine reason in favor of visceral appeal." *State v. Jones*, 355 N.C. at 134, 558 S.E.2d at 108. We conclude, therefore, that the prosecutor's remarks were improper. However, given the overwhelming evidence of defendant's guilt, the remarks did not " 'so infect[] the trial with unfairness that they rendered the conviction fundamentally unfair.' " *State v. Grooms*, 353 N.C. at 81, 540 S.E.2d at 732 (quoting *State v. Davis*, 349 N.C. at 23, 506 S.E.2d at 467). Thus, the trial court did not abuse its discretion by failing to intervene *ex mero motu*.

**[19]** Defendant next contends that the State invited the jury to put itself in the victims' places through several comments. Specifically, defendant cites the following argument by the prosecutor:

> [G]ive these cases the same careful consideration that you would expect these cases to be given had it happened to be your family that has been victimized by Roache and Lippard. Because those men came through your county on Interstate 40 and it was a total random event they ended up on the doorstep there at the Phillips' residence; they could have just as easily have ended up in your driveway or mine. Give the case the same careful consideration that you would if this was some serious matter that happened to one of your family or neighbors in your county.

The prosecutor further asked the jury to imagine how the victims individually must have felt before they were killed. Defendant also complains that the prosecutor stated that "[t]he victims in those five caskets are crying out from their graves that justice be rendered." Defendant contends that these statements collectively invited the jury to make its decision based on emotion rather than on reason and the evidence presented.

The State is not permitted to make arguments asking the jurors to put themselves in the victims' places. *State v. Hinson*, 341 N.C. 66, 75, 459 S.E.2d 261, 267 (1995). This case, however, is distinguishable from that general statement of law. In his argument, the prosecutor merely highlighted the random nature of this killing, which was held permissible in *State v. Fletcher*, 354 N.C. at 485-86, 555 S.E.2d at 553. Similarly, this Court "has repeatedly found no impropriety when the prosecutor asks the jury to imagine the fear and emotions of a victim." *State v. Warren*, 348 N.C. 80, 109, 499 S.E.2d 431, 447, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998). The prosecutor's arguments cited by defendant were not so grossly improper that the trial court erred by not intervening *ex mero motu*.

**[20]** The prosecutor here also compared the Phillips to defendant, saying, "[The Phillips were] [p]eople, members of the jury, who are producing[,] contributing folks, not thieving, doping individuals, like Mr. Roache over here. People who are contributing to society, not acting as a drain upon society." He further stated that "Mitzi and Eddie and Katie . . . . lived in that nice home up on the hill that was built by the sweat of their brow. They weren't thieving, doping, stealing people either, members of the jury." Defendant contends that these arguments were an attempt by the State to convince the jury to convict him not because he was guilty, but because he was of less worth than the Phillips family. Such a line of reasoning would have been impermissible, but the prosecutor's argument was not so contentious.

The State here did nothing more than draw inferences based on the evidence in the record. Defendant himself presented evidence that he had been drinking and using drugs before committing the crimes which he admitted. Likewise, Connie Millsaps testified as to the general nature and background of the victims. The prosecutor merely drew a comparison to highlight the randomness of the murders and the innocence of the victims who had an expectation of safety in their respective homes, factors which were relevant to the issue of malice. The prosecutor did not go so far as to suggest to the jury that it base its decision on the differences in life style between the victims and defendant. We decline to find that this argument was grossly improper.

**[21]** Defendant also briefly complains of the prosecutor's argument that "they say [defendant]'s not guilty of first-degree murder and the [d]efendant, members of the jury, sits over there and grins and has a big time while his attorneys try to paint him up as being the victim. Justice absolutely stood upon it's [sic] head, still victimizing the Phillips' family." Beyond citing this argument as problematic, defendant makes no argument as to why it is improper. Rule 28(a) limits appellate review to issues defined clearly and supported by arguments and authorities. N.C. R. App. P. 28(a). Defendant has failed to so argue, and we deem this contention inadequate for meaningful review.

**[22]** Defendant next complains that the prosecutor in closing suggested that defendant's expert witness, Dr. Coleman, perjured herself in exchange for the approximately $5000 she received in compensation for testifying. Specifically, the prosecutor stated that Dr. Coleman, was a "nice lady who just like the rest of us, she's trying to make a living, too. She's trying to get the bills paid." He stated, "She

ignored, members of the jury, all of the evidence that disagreed with her five thousand dollar opinion." Further, the prosecutor argued that "for five thousand dollars, I promise you she could fit anybody on this jury and me . . . anywhere in that book." He labeled her testimony as "nothing more than a hundred and twenty dollar an hour scam." And, finally, the prosecutor rhetorically asked, "So, what do you get for five thousand dollars? You apparently get whatever you want."

We decline to find that the prosecutor's statements about Dr. Coleman's credibility were grossly improper. Generally speaking, "it is not improper for the prosecutor to impeach the credibility of an expert during his closing argument." *State v. Norwood*, 344 N.C. 511, 536, 476 S.E.2d 349, 361 (1996), *cert. denied*, 520 U.S. 1158, 137 L. Ed. 2d 500 (1997). More to the point, though, this Court has recently considered this issue in depth in *State v. Rogers*, 355 N.C. 420, 462-64, 562 S.E.2d 859, 885-86 (2002). We noted there that

it is proper for a party to point out potential bias resulting from payment that a witness received or would receive for his or her services. However, where an advocate has gone beyond merely pointing out that the witness' compensation may be a source of bias to insinuate that the witness would perjure himself or herself for pay, we have expressed our unease while showing deference to the trial court.

*Id.* at 462-63, 562 S.E.2d at 885 (citations omitted). In *Rogers*, we concluded that a statement directly arguing that the defendant's expert witness lied in order to be paid was not so grossly improper that the trial court was required to intervene *ex mero motu*. *Id.* at 464, 562 S.E.2d at 886.

As in *Rogers*, the prosecutor's statements at issue—particularly the contention that you can "get whatever you want" for five thousand dollars—verge on being unacceptable. In keeping with our precedent as outlined in *Rogers*, we conclude that such statements were not so grossly improper as to require intervention *ex mero motu*. However, we do admonish counsel to refrain from suggesting that the expert's opinion testimony has been bought or is perjured for compensation.

**[23]** Defendant also asserts that the State made arguments during its closing that could be construed to reflect negatively on defendant's trial counsel's integrity. The prosecutor said, "I submit that when somebody standing up here [sic] before you [] plays fast and loose

with that kind of evidence, you better look out; you better look out."
He also, rather nonsensically, stated, "Ah, if there was only dream-
like state that I witnessed in this case was when my friend,
Mr. Siemens, stood up and told that to you, not substantiated with all
the facts anyway." Again, the prosecutor suggested that defense
counsel "are doing nothing more than trying to hide Mr. Roache
behind Dr. Coleman's skirts."

"[A] trial attorney may not make uncomplimentary comments
about opposing counsel, and should 'refrain from abusive, vitupera-
tive, and opprobrious language, or from indulging in invectives.' "
*State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (quoting
*State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967)). Under
this standard, the cases in which this Court has found comments
about opposing counsel to be improper involved much more inflam-
matory language than the remarks at issue in this case. Considered in
context, the statements defendant contends reflected poorly on
defense counsel are more properly viewed as shorthand commen-
tary on the arguments presented by defense counsel during closing
statement. As a result, the trial counsel did not have an obligation to
intervene *ex mero motu*.

[24] Finally, defendant contends that the trial court erred by failing
to intervene *ex mero motu* to stop the two district attorneys from
inserting what defendant alleges was their own personal opinion
throughout closing. Defendant argues that the prosecutor personally
vouched for the outrageousness of the crimes in saying, "I contend to
you first of all that there never has been and never could be crimes
and murders as outrageous and absolutely pointless as you've heard
these described." He also claims the prosecutor placed his personal
opinion before the jury by denigrating defendant's evidence of the
punishment prescribed by his father as a child: "Let me tell you some-
thing, in criminal courts over the last twenty years, twenty-five years,
I've heard a whole lot worse punishments described to juries than
simply having a child stand at attention." Additionally, the prosecutor
stated that giving defendant second-degree murder was the equiva-
lent of handing him an apology, as well as that "this is a situation that
ought to make somebody upset. If it don't make you upset, there's
something's wrong [sic]."

" 'Argument of counsel must be left largely to the control and dis-
cretion of the trial judge, and counsel must be allowed wide latitude
in their arguments which are warranted by the evidence and are not
calculated to mislead or prejudice the jury.' " *State v. Rogers*, 323 N.C.

658, 663, 374 S.E.2d 852, 856 (1989) (quoting *State v. Riddle*, 311 N.C. 734, 738, 319 S.E.2d 250, 253 (1984)). In this case the prosecutors' statements were nothing more than rhetorical flourishes made to advocate zealously for conviction. *See State v. McCollum*, 334 N.C. 208, 227, 433 S.E.2d 144, 154 (1993) (holding that similar statements were proper because of the prosecutor's role as a zealous advocate), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). Rather than stating his own beliefs, the prosecutor was emphasizing the severity of the crimes and advocating the State's position that defendant's evidence of his difficult childhood did not justify a diminished capacity defense. *See State v. Rouse*, 339 N.C. 59, 91-92, 451 S.E.2d 543, 560-61 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995). We decline to hold these statements grossly improper.

[25] On this same point, defendant argues that his trial counsel's failure to object to these seven statements at trial and to request a mistrial demonstrated ineffective assistance. We disagree. As noted earlier, "[c]ounsel is given wide latitude in matters of strategy." *State v. Fletcher*, 354 N.C. at 482, 555 S.E.2d at 551. Moreover, a strong presumption exists that trial counsel's representation is within the boundaries of acceptable professional conduct. *State v. Fisher*, 318 N.C. at 532, 350 S.E.2d at 346. After reviewing defendant's assignments of error, we cannot conclude that trial counsel's failure to object or to move for mistrial on the basis of the challenged statements was not within the bounds of accepted professional representation. The challenged comments did not render defendant's trial fundamentally unfair nor deprive defendant of a trial whose result was unreliable. These assignments of error are overruled.

Defendant makes several assignments of error pertaining to the trial court's instructions to the jury, particularly with regard to the defense of diminished capacity. Defendant contends that the trial court erred by: (i) telling the jury that it must be "simply satisfied" with defendant's evidence in order to find it believable; (ii) failing to give defendant's requested instruction on diminished capacity; (iii) failing to give an instruction on diminished capacity as applied to the felony murder of Eddie Phillips; (iv) failing to give a diminished capacity instruction in connection with the acting in concert doctrine; and (v) failing to mention diminished capacity when the jury requested re-instruction on various issues. We consider each of these contentions in turn.

[26] Defendant first contends that the trial court erred by instructing the jury that it must be "simply satisfied" with defendant's evidence

in order to find it believable. By so instructing, defendant argues, the trial court impermissibly placed a burden on defendant to satisfy the jury that the evidence was believable, turning the defense of diminished capacity into an affirmative defense. Defendant additionally claims that the instruction would be understood by jurors to mean that unless all of the jurors were satisfied with the evidence, none of them could consider the evidence.

An instruction to a jury will not be viewed in isolation, but rather must be considered in the context of the entire charge. *State v. Holden*, 346 N.C. 404, 438-39, 488 S.E.2d 514, 533 (1997), *cert. denied*, 522 U.S. 1126, 140 L. Ed. 2d 132 (1998). Instructions that as a whole present the law fairly and accurately to the jury will be upheld. *State v. Rich*, 351 N.C. 386, 393-94, 527 S.E.2d 299, 303 (2000) (quoting *State v. Lee*, 277 N.C. 205, 214, 176 S.E.2d 765, 770 (1970)).

Here, the trial court properly charged the jury as to the burden of proof at two separate points in the jury charge by specifically stating that defendant had no burden of proof and also that the jury was to decide the case using "as much of th[e] evidence as you see fit to believe, to the extent of beyond a reasonable doubt in accordance with what the State must prove." After the court finished instructing the jury, defendant raised concerns about the court's instruction that the jury had to be "simply satisfied" with defendant's evidence, arguing that the instruction seemed to imply defendant had a burden to prove something. As a result the trial court clarified its instruction the following morning before deliberation began:

Yesterday, during my instructions at various times, I told you that the ah, in order to believe any of the [d]efendant's evidence, that that does not have to be believed to the extent of beyond a reasonable doubt, but simply, that it's more likely than not to be believable or stated another way, just simply satisfy you that it's believable because the [d]efendant has no burden to prove anything and that's not to—by telling you that, that's not to infer or imply or express that the [d]efendant has any burden to prove anything.

The burden remains with the State of North Carolina to satisfy you of his guilt as to the original charge or any lesser included charge from the evidence to the extent of beyond a reasonable doubt on each and every case. If the State fails to meet that in any respect or any regard, it would be your duty to find the

[d]efendant not guilty on that case or those cases, whichever the case may be.

After this instruction, the trial court asked whether the parties had any comment about the instructions and defendant indicated that he did not, but that he would renew his earlier objections. The charge to the jury and the trial court's supplemental clarification were correct statements of law and did not place an impermissible burden on defendant. Accordingly, defendant's argument has no merit.

[27] Defendant also argues that the trial court erred by refusing to give the exact words of defendant's requested instruction on diminished capacity, which stated that the jury must consider the evidence presented about mental capacity before determining defendant's guilt of premeditated and deliberate murder. This argument has no merit.

A defendant may request a jury instruction in writing, and the trial court must so instruct provided the instruction is supported by the evidence. However, a trial court is not obligated to give a defendant's exact written instruction so long as the instruction actually given delivers the substance of the request to the jury. *State v. McNeill*, 346 N.C. 233, 239, 485 S.E.2d 284, 288 (1997), *cert. denied*, 522 U.S. 1053, 139 L. Ed. 2d 647 (1998); *State v. Atkins*, 349 N.C. 62, 90, 505 S.E.2d 97, 115 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). Also, as noted above, when instructions, viewed in their entirety, present the law fairly and accurately to the jury, the instructions will be upheld. *State v. Rich*, 351 N.C. at 393-94, 527 S.E.2d at 303.

The trial court in this case instructed the jury first on specific intent, then on the elements of the crimes charged, and finally on diminished capacity. The trial court used the pattern jury instructions on diminished capacity. *See State v. Carroll*, 356 N.C. 526, 538-40, 573 S.E.2d 899, 907-09 (2002) (finding no plain error where the trial court gave pattern jury instructions on diminished capacity), *cert. denied*, —— U.S. ——, 156 L. Ed. 2d 640 (2003). The pattern instructions on diminished capacity direct a jury to consider the defendant's mental capacity and whether or not intoxication or a drugged condition prevented the defendant from forming the specific intent necessary to commit the crimes charged. N.C.P.I.—Crim. 305.10, 305.11 (2003). The charge as a whole was an accurate statement of the law, and the trial court did not err in refusing to give defendant's requested instruction.

**STATE v. ROACHE**

[358 N.C. 243 (2004)]

**[28]** In his next argument, defendant contends that the trial court erred by failing to give an instruction on diminished capacity when instructing the jury on felony murder for the murder of Eddie Phillips. Defendant further alleges that the mandate given with reference to the felony murder of Eddie Phillips failed to refer to diminished capacity based on mental illness. After careful review of the record, however, we find that the jury was properly instructed.

We note initially that defendant's assignment of error does not contain any reference to the court's alleged omission of mental illness from the mandate in the felony murder charge for Eddie Phillips. Accordingly, the arguments from defendant's brief concerning this issue are not properly before this Court. N.C. R. App. P. 10(a).

We further note that defendant did not object to the instructions as given at trial and, thus, must satisfy the plain error standard of review. To demonstrate plain error, a defendant " 'must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict.' " *State v. Barden*, 356 N.C. 316, 383, 572 S.E.2d 108, 150 (2002) (quoting *State v. Lucas*, 353 N.C. 568, 584, 548 S.E.2d 712, 723 (2001)), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 1074 (2003).

The trial court, in instructing on the felony murder of Eddie Phillips based on the underlying felony of armed robbery, failed to give an instruction on diminished capacity. However, immediately after instructing for the offenses regarding Eddie Phillips, the trial court went on to instruct the jury on the offenses applicable to first Mitzi Phillips and then Katie Phillips. These instructions included instructions on diminished capacity. In particular, when the court instructed on the felony murder of Mitzi Phillips, which was based on the predicate felonies of first-degree burglary and/or armed robbery, the court added, "And let me go back just a minute. Each and both of those offenses, that is armed robbery and ah, also first degree burglary involve some aspect of specific intent to commit those offenses." The court then instructed on diminished capacity by reason of intoxication or a drugged condition and whether such a condition would affect defendant's ability to form the specific intent needed for either felony. By addressing specific intent and diminished capacity within the instruction on Mitzi Phillips' death, the trial court informed the jury that diminished capacity applied to armed robbery, which was the underlying felony in Eddie Phillips' murder. With this instruction the jurors would have understood that dimin-

ished capacity could be considered as a defense for the felony murder of Eddie Phillips. This assignment of error is overruled.

**[29]** Defendant next argues that the trial court erred in failing to instruct on diminished capacity with regard to acting in concert. The acting in concert doctrine allows a defendant acting with another person for a common purpose of committing some crime to be held guilty of a murder committed in the pursuit of that common plan even though the defendant did not personally commit the murder. *State v. Barnes*, 345 N.C. at 233, 481 S.E.2d at 71. Defendant argues that diminished capacity bears on a defendant's intent to join in the common purpose. However, a defense of diminished capacity negates the specific intent requirement of a specific intent crime because a defendant whose mental capacity is diminished is unable to form the specific intent to commit the crime. *State v. Page*, 346 N.C. at 699, 488 S.E.2d at 232. This Court has never applied the doctrine of diminished capacity to the general intent necessary for acting in concert, and defendant has cited no authority to support extension of its application. Given that under the acting in concert doctrine a defendant may be held guilty not only for the crime originally intended but also for "any other crime committed by the other in pursuance of the common purpose," *State v. Barnes*, 345 N.C. at 233, 481 S.E.2d at 71 (quoting *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991)), we decline to so extend the doctrine at this time. Defendant's argument has no merit. Moreover, since we reject defendant's argument on the substantive question, we cannot conclude that defendant's counsel was ineffective for failing to object to the court's instruction as given.

**[30]** In another argument, defendant contends that the trial court erred by failing to include an instruction on diminished capacity when the jury requested clarification on points of law after deliberations had begun. The jury requested reinstruction on the elements of first-degree murder and on how premeditation and deliberation and aiding and abetting differ from felony murder. Defendant contends that the trial court erred by failing to reinstruct on diminished capacity with regard to the felony murders of Cora and Earl Phillips and by limiting the reinstruction to alcohol and drug intoxication for the felony murders of Eddie, Mitzi, and Katie Phillips. Defendant argues further that the reinstruction eliminated diminished mental capacity on account of mental illness from consideration in these felony murders. Although defendant did not object to the reinstruction at the time, defendant now claims that the error amounted to plain error

and that his counsel's failure to object constituted ineffective assistance. We reject these arguments.

As we stated above, for defendant to demonstrate plain error he " 'must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict.' " *State v. Barden*, 356 N.C. at 383, 572 S.E.2d at 150 (quoting *State v. Lucas*, 353 N.C. at 584, 548 S.E.2d at 723). We conclude that the instructions here were not erroneous. The trial judge began his response to the jury with a caveat:

> I'll remind you now, members of the jury, that even though I'm not going to repeat all of my instructions I previously gave you, you will consider that I have done so as if I have repeated them even though I'm not going to do that and even though I'm going to highlight my response based upon your question, but you're not to give any undue preference or deference to what I'm about to tell you versus what I've heretofore told you. It's simply to answer the specific question that you've asked.

Thus, the trial court prefaced the reinstruction by admonishing that the reinstruction was not to take the place of the original charge and that the complete charge would not be repeated but must be considered. The jury did not specifically request reinstruction on diminished capacity, although the trial court included such instruction with regard to some of the crimes. The trial court appropriately responded to the jury's questions by answering only that which was asked. Defendant's argument that this reinstruction constituted plain error is without merit.

[31] On this same point, defendant argues that his counsel's failure to object to the reinstruction demonstrated ineffective assistance. We disagree. Inasmuch as the reinstruction was not erroneous and did not prejudice defendant, trial counsel's failure to renew earlier objections could not have amounted to ineffective assistance.

[32] Defendant finally contends that the trial court committed error by effectively shifting the State's burden of proof to defendant. Defendant argues that the trial court relieved the State of its burden of proof, thus violating defendant's constitutional rights. We have addressed each assignment of error and have found no error with the trial court's instructions and actions. We, therefore, also conclude that the trial court did not shift the State's burden or otherwise vio-

late defendant's constitutional rights. Accordingly, these assignments of error are overruled.

**[33]** Defendant next assigns error to the trial court's instruction to the jury on the elements of first-degree kidnapping. The legislature has defined kidnapping as an unlawful confinement or removal from one place to another for the purpose of committing certain specified acts. N.C.G.S. § 14-39(a) (2003). Kidnapping is of the first degree "[i]f the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted." N.C.G.S. § 14-39(b). Defendant objected to the instruction on the element that the person confined was not released in a safe place:

> And if you find from the evidence beyond a reasonable doubt that either Earl Phillips and/or Cora Phillips was killed by the [d]efendant, either acting by himself or together with another, that would not—that would constitute not releasing one in a safe place.

Defendant contends that the trial court's instruction impermissibly deprived the jury of its fact-finding role with regard to the issue of whether the victims were released in a safe place and, thus, violated defendant's constitutional rights.

This Court has addressed an issue similar to this one in *State v. Johnson*, 320 N.C. 746, 360 S.E.2d 676 (1987), upholding a similar jury instruction regarding what constituted a serious injury for an element of first-degree kidnapping. *Id.* at 750-51, 360 S.E.2d at 679-80. In *Johnson*, the instruction given stated that the stabbing of a person with scissors would constitute a serious injury for purposes of the "serious injury" element of first-degree kidnapping. *Id.* Turning to the instant case, unquestionably, a person who is killed during the course of a kidnapping is not released in a safe place. Therefore, as in *Johnson*, we hold that this instruction is proper and did not impermissibly usurp the jury's fact-finding role.

Even assuming *arguendo* that the instruction was improper, defendant would not be prejudiced in this case. The "not released in a safe place" element applies to first-degree kidnapping, but not to second-degree kidnapping. N.C.G.S. § 14-39(b). Either crime, however, would have served as an underlying felony for felony murder. N.C.G.S. § 14-17 (2003). "When a jury finds the facts necessary to constitute one offense, it also inescapably finds the facts necessary to constitute all lesser-included offenses of that offense." *State v.*

*Squires*, 357 N.C. 529, 536, 591 S.E.2d 837, 842 (2003). *See also State v. Vance*, 328 N.C. 613, 623, 403 S.E.2d 495, 502 (1991). Accordingly, the jury here, by finding first-degree kidnapping, necessarily found facts sufficient to convict defendant of second-degree kidnapping, a felony which would have supported his felony murder conviction. Even had the jury not been instructed that murder was the equivalent of not being released in a safe place, defendant would have been convicted of felony murder. Contrary to defendant's contention, this error, if any, did not constitute structural error. Defendant having shown no prejudice, this assignment of error is overruled.

[34] By another assignment of error, defendant contends that the trial court's instruction to the jury regarding evidence of the Watt murder was improper in that it allowed the jury to consider the evidence too broadly. Defendant claims this error constituted a violation of his constitutional rights and contends that his counsel's failure to object to this evidence at trial constituted ineffective assistance of counsel. We reject these claims.

Defendant did not object to this instruction at the time it was given and, therefore, must show that the trial court committed plain error. For defendant to demonstrate plain error, he " 'must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict.' " *State v. Barden*, 356 N.C. at 383, 572 S.E.2d at 150 (quoting *State v. Lucas*, 353 N.C. at 584, 548 S.E.2d at 723).

The instruction in question stated:

Now, members of the jury, evidence about the occurrences and events surrounding that particular alleged homicide were not admitted and are not admissible to prove that the [d]efendant was capable or likely to do the matters that he's charged with in these cases. They may be admissible, if you see fit to believe any of what you heard about that to the extent of beyond a reasonable doubt, they may be admissible for other purposes and those purposes are proof of motive and/or intent and/or preparation and/or plans with regard to the matters that he's charged with in these cases to the extent, if any, that he acted in conformity with the charge, with the charges that the State has lodged against him here. But for considering those events that you see fit to consider them all or you may not consider them for any other purposes.

This instruction is consistent with the Rule 404(b) of the North Carolina Rules of Evidence, which allows the State to introduce evidence of other crimes of a defendant for the limited purpose of showing "proof of motive, opportunity, intent, preparation, [or] plan." N.C.G.S. § 8C-1, Rule 404(b); *see also State v. Carter*, 338 N.C. 569, 592-93, 451 S.E.2d 157, 170 (1994). Watt's murder could potentially be seen as evidence of defendant's intent to kill or as part of defendant's preparation in or overall plan for the crime spree. Therefore, the trial court's instruction to the jury on the permissible uses of this evidence conveyed the correct legal standard to the jury and does not constitute error.

Having found no impropriety in the instruction given, we also reject defendant's claims of ineffective assistance rising out of defense counsel's failure to object. This assignment of error is overruled.

**[35]** Defendant next assigns error to the trial court's instructions on felony murder. Defendant specifically contends that the trial court should have instructed the jury that it had to be unanimous in determining whether defendant was guilty of felony murder based on defendant's commission of an underlying felony or based on acting in concert with Lippard in committing an underlying felony. Therefore, according to defendant, the State was relieved of its burden to prove all of the elements of felony murder. Defendant additionally claims that his trial counsel's failure to object constituted ineffective assistance of counsel. These arguments are without merit.

The trial court properly instructed the jury that it must be unanimous in finding defendant guilty of first-degree murder, whether based on felony murder or on premeditation and deliberation. *See* N.C.G.S. § 15A-1235(a) (2003). The trial court also instructed the jury that it must be unanimous in finding which felony defendant engaged in that subjected him to the felony murder rule. Whether defendant acted in concert with Lippard or committed the underlying felony, defendant would still be guilty of felony murder in either case. The jurors were unanimous in finding defendant to be guilty of felony murder. The instruction as given was not improper and defendant has failed to show plain error.

Defendant's claim of ineffective assistance of counsel based on his counsel's failure to object to the instructions at issue here must also fail. As held immediately above, this instruction was not given improperly, so defense counsel had no obligation to object. We overrule this assignment of error.

**[36]** Defendant's next assignment of error contests the trial court's instructions to the jury on intent with respect to the murder of Cora Phillips. The trial court instructed as follows:

> [I]f you find from the evidence . . . that the [d]efendant, either acting by himself or together with another, while committing the offenses of armed robbery, you remember these elements that I told you about . . . and I refer you again to the elements that I gave you that must be satisfied by the State to your satisfaction to the extent beyond a reasonable doubt as to first degree murder, and that the [d]efendant had the required specific intent to commit one, some or all of those underlying felonies, either acting by himself or together with another, considering his alleged intoxication, voluntary intoxication and/or—and/or drug condition, . . . or all of those underlying felonies considering his alleged voluntary intoxication and/or voluntary drug condition, that the [d]efendant either acted by himself or together with another, killed Cora Phillips . . . it would be your duty to return a verdict of guilty of first degree murder based upon the first degree felony murder rule.

Defendant contends that this instruction allowed jurors to impute Lippard's intent to defendant if the jurors found that Lippard had the necessary specific intent to commit the underlying felonies. By implication, according to defendant, the trial court shifted the State's burden of proof to defendant, violating due process requirements. Defendant further claims that his counsel's failure to object constituted ineffective assistance. These arguments are flawed.

A jury instruction must be evaluated as a whole. If the entire instruction is an accurate statement of the law, one isolated piece that might be considered improper or wrong on its own will not be found sufficient to support reversal. *State v. McWilliams*, 277 N.C. 680, 684-85, 178 S.E.2d 476, 479 (1971); *see also State v. Chandler*, 342 N.C. 742, 751-52, 467 S.E.2d 636, 641 (citations omitted), *cert. denied*, 519 U.S. 875, 136 L. Ed. 2d 133 (1996). The trial court's instruction viewed as a whole correctly charged the jury on felony murder. Defendant argues that one portion in particular was improper: "[T]he [d]efendant had the required specific intent to commit one, some or all of those underlying felonies, either acting by himself or together with another. . . ." We understand this part of the instruction to mean that whether the felonies were committed by defendant or by Lippard, if defendant had the specific intent to commit one or any of

the felonies, then he would be guilty of felony murder. This instruction was therefore proper. Defendant's claims of error on the instruction as well as on his counsel's assistance are without merit.

[37] Next, defendant contends that the trial court improperly overruled defendant's objection to the State's use of two alternative theories of guilt; namely, "aiding and abetting" in connection with premeditation and deliberation, and "acting in concert" with regard to felony murder. Defendant contends that the trial court's failure to require the State to elect between these two theories effectively relieved the State of its burden of proof. Therefore, according to defendant, his federal and state constitutional rights were violated.

Defendant's argument that the two theories utilized by the State are mutually exclusive has no merit. In any given case, both theories may be proven by the same evidence. We have held that " '[t]he distinction between [a defendant being found guilty of] aiding and abetting and acting in concert . . . is of little significance.' " *State v. Bonnett*, 348 N.C. 417, 440, 502 S.E.2d 563, 578 (1998) (quoting *State v. Williams*, 299 N.C. 652, 656, 263 S.E.2d 774, 777 (1980)) (alterations in original), *cert. denied*, 525 U.S. 1124, 142 L. Ed. 2d 907 (1999). In this case, defendant has shown no prejudice flowing from the fact that the State proceeded on both theories. Therefore, we find no merit to this argument.

## SENTENCING PROCEEDING

[38] Next, defendant claims that the trial court erred by denying his motion at sentencing to admit Exhibits 34 and 35, excerpts from the State's arguments to the jury at Lippard's trial during which the prosecutor avowed that Lippard committed the murders of Earl and Cora Phillips. We considered and rejected this argument above in the context of the guilt phase of trial, but defendant contends that the unique considerations present in a sentencing hearing require admission of this evidence in sentencing even if it were deemed inadmissible at the guilt phase. In particular, defendant directs our attention to our holding in *State v. Jones*, 339 N.C. 114, 451 S.E.2d 826 (1994), *cert. denied*, 515 U.S. 1183, 132 L. Ed. 2d 873 (1995), that "[w]hen evidence is relevant to a critical issue in the penalty phase of a capital trial, it must be admitted, evidentiary rules to the contrary under State law notwithstanding." *Id.* at 154, 451 S.E.2d at 847. Defendant further points out that a sentencing body must "not be precluded from considering, as a mitigating factor, any aspect of the defendant's charac-

ter or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990 (1978) (emphasis removed). The proffered exhibits in question do not meet the description of evidence which must be admitted at defendant's request.

This Court has held that "reconsideration of any residual doubt a juror might have privately harbored as to defendant's guilt is irrelevant in determining defendant's appropriate sentence, as it does not bear upon an aspect of defendant's character, record or the circumstances of the offense." *State v. Walls*, 342 N.C. 1, 53, 463 S.E.2d 738, 766 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). The exhibits defendant claims should have been admitted are relevant only to the issue of whether defendant actually committed the murders for which he was already convicted. Accordingly, this evidence was appropriately excluded from the sentencing hearing under our holding in *Walls*.

Moreover, the jury's final sentencing recommendation in this case demonstrates that defendant was not prejudiced by the exclusion of this evidence even had the trial court erred in excluding it. The statements by the prosecutor during Lippard's trial pertain to whether Lippard or defendant actually pulled the trigger in the murders of Earl and Cora Phillips. Defendant was sentenced to life imprisonment, not death, for these two murders; hence, defendant was not prejudiced at sentencing by the trial court's exclusion of this evidence. Defendant would also have us now consider whether the admission of this statement could have had an impact on the jury's finding of the (e)(11) "course of conduct" aggravator in the murders for which he did receive the death penalty. Defendant did not raise this argument at trial; thus, it is deemed waived on appeal. *See* N.C. R. App. P. 10(b)(1). "This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991). This assignment of error is accordingly overruled.

[39] Defendant, by his next assignment of error, contends that the trial court erred by sustaining the State's objection to defendant's attempt to introduce the fact that Lippard was sentenced to life imprisonment for these five murders. Before this Court defendant argues that evidence of Lippard's sentences should have been admitted as support for the (f)(9) catchall mitigating circumstance. Defendant's argument misconstrues this Court's precedent.

This Court has previously determined that a co-defendant's sentence has no mitigating effect in and of itself. As this Court stated by way of rationale more than twenty years ago, "the fact that the defendant's accomplices received a lesser sentence is not an extenuating circumstance. It does not reduce the moral culpability of the killing nor make it less deserving of the penalty of death than other first-degree murders." *State v. Williams*, 305 N.C. 656, 687, 292 S.E.2d 243, 261, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982); *see also State v. Jaynes*, 353 N.C. at 563-64, 549 S.E.2d at 200-01.

Nonetheless, defendant argues that this Court's holding in *State v. Roseboro*, 351 N.C. 536, 528 S.E.2d 1, *cert. denied*, 531 U.S. 1019, 148 L. Ed. 2d 498 (2000), dictates that a co-defendant's sentence is relevant for consideration with regards to the catchall mitigator, N.C.G.S. § 15A-2000(f)(9). In *Roseboro* we acknowledged that "the jury may consider an accomplice's sentence as a mitigating circumstance under the 'catchall' instruction." *Id.* at 547, 528 S.E.2d at 8. However, this consideration applies in a case where evidence of the co-defendant's sentence is already before the court, such as where the co-defendant testified at trial and evidence of a plea bargain was presented by way of impeachment. *See, e.g.*, *State v. Gregory*, 340 N.C. at 415, 459 S.E.2d at 667.

Even assuming *arguendo* that defendant's argument were well-founded, defendant would not benefit in this case. During the bench conference, defense counsel explicitly tied his request that the court admit evidence of Lippard's sentences to the (f)(8) mitigating circumstance, that defendant aided and abetted law enforcement in apprehending Lippard. At no point did counsel suggest that this evidence be admitted for consideration in conjunction with the (f)(9) catchall mitigator. "This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *State v. Eason*, 328 N.C. at 420, 402 S.E.2d at 814. Defendant's argument concerning the (f)(9) mitigator, is, therefore, waived on appeal.

Defendant's allegations of constitutional error are also misplaced. This Court, as explained above, has held that a defendant has no constitutional right to have his co-defendant's sentence considered in mitigation since such evidence is irrelevant to the sentencing proceeding. Thus, constitutional error cannot lie based on the omission of such evidence. Defendant's assignment of error is overruled.

[40] In his next assignment of error, defendant complains of the victim impact evidence presented by the State during the sentencing

hearing. The State presented evidence from four witnesses: three of Eddie and Mitzi Phillips' children—Ginger Phillips, Connie Millsaps, and Sarah Phillips—and Earlene Jenkins, Eddie Phillips' sister. These witnesses testified as to the physical, psychological, and emotional effect the five Phillips' deaths had on themselves and others in the family and community. Defendant contends that this evidence violated his right to due process and rendered his sentencing hearing fundamentally unfair.

We note initially that defendant's assignment of error relates only to the testimony of Connie Millsaps and Sarah Phillips. Accordingly, the arguments from defendant's brief concerning the testimony of Ginger Phillips and Earlene Jenkins are not properly before this Court. N.C. R. App. P. 10(a).

Admission of victim impact evidence has been approved by the United States Supreme Court, see *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720 (1991); this Court, see *State v. Reeves*, 337 N.C. 700, 722-24, 448 S.E.2d 802, 811-12 (1994); and the North Carolina legislature. N.C.G.S. § 15A-833 (2003). The impact evidence authorized by this statute includes "[a] description of the nature and extent of any physical, psychological, or emotional injury suffered by the victim as a result of the offense committed by the defendant." N.C.G.S. § 15A-833(a)(1). As this Court has stated, "So long as victim-impact statements are not so prejudicial as to 'render[] the [trial] fundamentally unfair,' no constitutional impediment exists to their use in capital sentencing hearings." *State v. Smith*, 352 N.C. 531, 554, 532 S.E.2d 773, 788 (2000) (quoting *Payne v. Tennessee*, 501 U.S. at 825, 115 L. Ed. 2d at 735), *cert. denied*, 532 U.S. 949, 149 L. Ed. 2d 360 (2001).

In this case the State properly used victim impact testimony to describe the specific harm caused by defendant's actions, including the psychological repercussions the murders had on these family members and the community. The evidence was not so inflammatory as to render defendant's sentencing hearing fundamentally unfair, but instead " 'remind[ed] the sentencer that . . . the victim[s] [were] individual[s] whose death[s] represent[] a unique loss to society and in particular to [their] famil[ies].' " *Payne v. Tennessee*, 501 U.S. at 825, 115 L. Ed. 2d at 735 (quoting *Booth v. Maryland*, 482 U.S. 496, 517, 96 L. Ed. 2d 440, 457 (1987) (White, J., dissenting), *overruled by Payne*). Defendant's assignment of error is overruled.

[41] Defendant next contends that the trial court committed error and plain error by permitting the State to cross-examine defendant's

mother, Bonnie Treadway, about defendant's prior criminal history during the sentencing hearing. Defendant argues that since the (f)(1) mitigating circumstance, that defendant had no significant history of criminal activity, was not submitted, this examination was improper. Specifically, the State asked Treadway about assaults by defendant on his father, his sister, his ex-wife, a girlfriend, and a deputy sheriff. Defense counsel only objected to a question concerning an assault on defendant's ex-wife. This objection was overruled. Defendant further asserts that counsel's failure to object to the remainder of the questions at issue was ineffective assistance.

"Admissibility of evidence at a capital sentencing proceeding is not subject to a strict application of the rules of evidence, but depends on the reliability and relevance of the proffered evidence." *State v. Atkins*, 349 N.C. at 77, 505 S.E.2d at 107; *see also State v. Strickland*, 346 N.C. at 461, 488 S.E.2d at 205. Additionally, the statute provides that "evidence presented during the guilt determination phase of the case . . . is competent for the jury's consideration in passing on punishment." N.C.G.S. § 15A-2000(a)(3). In this case, evidence of defendant's prior criminal history, including five cases of assault, was admitted into evidence during cross-examination of Dr. Coleman by the State. "[A] trial court has great discretion to admit any evidence relevant to sentencing." *State v. Thomas*, 350 N.C. 315, 359, 514 S.E.2d 486, 513, *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999). In this case Treadway testified on direct examination that she did not know her son to be violent when he was not drinking and that defendant would drink in a shed behind her home. In light of this testimony, we conclude the trial court did not commit error by overruling defendant's objection to the State's question about the assault on defendant's ex-wife, nor did it commit plain error by failing to intervene to stop the State from asking the other questions at issue. *See State v. Hedgepeth*, 350 N.C. 776, 784-85, 517 S.E.2d 605, 610-11 (1999). Moreover, defense counsel was not ineffective by failing to object to these additional questions in that the questions were relevant and reliable, and, thus, were admissible.

[42] Defendant also contends that the trial court erred by sustaining the State's objection to defendant's attempt to elicit evidence concerning Lippard's behavior. Jasper Dunlap testified for defendant during the sentencing proceeding about his treatment of defendant during Dunlap's tenure as a behavioral specialist at the Juvenile Evaluation Center in Swannanoa, North Carolina. Dunlap further testified that he had also been Lippard's behavioral specialist, but the

**STATE v. ROACHE**

[358 N.C. 243 (2004)]

trial court sustained the State's objection to defendant's attempt to ask Dunlap if he had "observe[d] any particular behaviors in [Lippard]." Defense counsel did not make an offer of proof as to how Dunlap would have answered this question, and defendant now asserts that this failure constituted ineffective assistance.

As noted in the issue immediately above, the standard for whether evidence is admissible at a sentencing hearing hinges on the evidence's reliability and relevance. *State v. Atkins*, 349 N.C. at 77, 505 S.E.2d at 107. Before admitting evidence the trial court must determine that it is relevant to sentencing. *See State v. Thomas*, 350 N.C. at 359, 514 S.E.2d at 513. Lippard's behaviors from ten years earlier—the only time period about which Dunlap apparently had knowledge—cannot be said to be relevant to defendant's "character, record or the circumstances of the offense." *State v. Walls*, 342 N.C. at 53, 463 S.E.2d at 766 (referring to language from *Franklin v. Lynaugh*, 487 U.S. 164, 174, 101 L. Ed. 2d 155, 166 (1988)). We hold that the trial court did not abuse its discretion by excluding such evidence from the sentencing jury's consideration and that defendant has failed to show ineffective assistance of counsel.

[43] Defendant's next arguments mirror a pair of assignments of error discussed above in the context of the guilt phase of trial. First, defendant argues that the State improperly questioned witnesses with the effect of placing before the jury information on which it had presented no testimony or proof. Second, defendant contends that the trial court erred by failing to intervene *ex mero motu* to prevent the prosecutor from making certain arguments during his closing statement. Additionally, defendant claims that his trial counsel provided ineffective assistance by failing: (i) to object to the allegedly speculative questions; (ii) to object to the State's allegedly improper closing arguments; and (iii) to request a mistrial. We disagree.

Defendant points to the allegedly improper cross-examination of two witnesses as basis for this argument. The State cross-examined Vaughn Burnette, a minister, as to whether he had witnessed several occurrences of aggressive behavior by defendant while defendant was incarcerated such as tearing the telephone off the wall, throwing food, and throwing water; Burnette replied negatively. The State also cross-examined defendant's sister, Linda Josey, about defendant's socializing with her and their father in the courtroom and about the source of funds enabling her to be present at the trial. Defendant argues that these questions, along with the alleged deficiencies in the State's closing argument discussed be-

low, amounted to structural error for which defendant's death sentence should be overturned.

As noted above, the Rules of Evidence do not apply in sentencing proceedings. N.C.G.S. § 8C-1, Rule 1101(b)(3). Any evidence the trial court "deems relevant to sentence" may be introduced at this stage. N.C.G.S. § 15A-2000(a)(3). The limits of cross-examination are determined by the sound discretion of the trial court and the requirement that the questions be asked in good faith. *State v. Larry*, 345 N.C. 497, 523, 481 S.E.2d 907, 922, *cert. denied*, 522 U.S. 917, 139 L. Ed. 2d 234 (1997). Further, "[a] prosecutor's questions are presumed to be proper unless the record shows that they were asked in bad faith." *State v. Bronson*, 333 N.C. 67, 79, 423 S.E.2d 772, 779 (1992).

The trial court had no duty to intervene *ex mero motu* to stop the prosecutor from asking these questions. Moreover, the trial court's implicit determination that the evidence in question was relevant to the jury's sentencing decision did not constitute an abuse of discretion. The testimony concerning defendant's behavior in prison was relevant to rebut Burnette's testimony on direct examination that defendant's character had changed while he was in prison and since he "let the Lord come in his life." The State's questions to Josey about defendant's interaction with his father in the courtroom were designed to discredit defendant's evidence that he and his father had a poor relationship. Similarly, the State, by asking Josey how she had afforded to attend defendant's trial, sought to show that she was there at someone else's behest rather than out of sisterly devotion. These inferences to be drawn from the challenged testimony, illustrate that the evidence was relevant and, thus, permissible.

Furthermore, defendant has pointed us to nothing in the record suggesting that the prosecutor asked these questions in bad faith. Accordingly, we presume the questions were proper. Because the questioned testimony was relevant and was not elicited in bad faith, defendant's counsel's decision not to object did not constitute deficient performance. This assignment of error is overruled.

[44] Turning to defendant's assignment of error regarding the prosecution's closing, defendant's first of five specific arguments suggests that the State injected personal opinion into its closing argument. Primarily, defendant points to the State's use of the words "we think," "we believe," "our perspective," and "our idea." Additionally, he cites the following passage: "As the elected District Attorney and Chief Law Enforcement officer of this area, I come before you to state that

many aggravating factors exist in this case." The complained-of passages are not impermissible statements of opinion. These turns of phrase would have been understood by the jury as remonstrances by the prosecutor to find that the aggravating circumstances existed and outweighed the proposed mitigating circumstances to such an extent that the death penalty was the proper sentencing recommendation. Defendant having failed to object, we decline to find that the arguments in question were so grossly improper that the trial court was required to intervene *ex mero motu*.

**[45]** Second, defendant argues that the State impermissibly mischaracterized North Carolina law in order to encourage the jury to recommend a death sentence for defendant. Defendant asserts that the prosecution argued that this State's law favors killers over their victims at sentencing. The specific argument to which defendant assigns error concerned the statutory scheme that the State is permitted to submit fewer aggravators than a defendant is allowed to submit mitigators. This Court has upheld arguments of this nature in the past as methods of attacking the weight of mitigating circumstances and convincing the jury that a greater number of mitigators should not outweigh a lesser number of aggravators. *See State v. Frye*, 341 N.C. 470, 506-07, 461 S.E.2d 664, 683 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996). In keeping with our precedent, we hold that this argument was not grossly improper.

**[46]** Third, defendant directs our attention to portions of the prosecutor's closing in which he contends the State urged the jury to place itself in the position of the victims. Specifically, defendant directs our attention to the following argument by the prosecutor:

> It makes us think, members of the jury, how much we need our families. Think about, if you will, what a horrible experience it would be if one or two of our close family members were murdered. What about, members of the jury, if it was five members of three generations of your family or mine, murdered by complete strangers, at random, for no apparent reason.

The prosecutor also argued in the context of discussing the (e)(9) especially heinous, atrocious, or cruel aggravator, "Your home is entered by two strangers, Mr. Lippard and Mr. Roache." As we noted above in the context of the guilt phase of trial, the State is not permitted to make arguments asking the jurors to put themselves in the victims' places. *State v. Hinson*, 341 N.C. at 75, 459 S.E.2d at 267. However, the prosecutor's argument here was less about jurors imag-

ining themselves as the victims and more of an effort to force the jury to appreciate fully the circumstances and impact of the crime. The use of similar arguments for this purpose has been endorsed previously by this Court. *State v. Miller*, 339 N.C. 663, 684-85, 455 S.E.2d 137, 148-49, *cert. denied*, 516 U.S. 893, 133 L. Ed. 2d 169 (1995). The trial court was not required to intervene *ex mero motu* to prevent the prosecution from making these arguments.

[47] Fourth, defendant points to arguments that he contends speculated on matters outside of the record. This Court has held that

> [c]ounsel are entitled to argue to the jury all the law and facts in evidence and all reasonable inferences that may be drawn therefrom, but may not place before the jury incompetent and prejudicial matters and may not travel outside the record by interjecting facts . . . not included in the evidence.

*State v. Fletcher*, 354 N.C. at 486, 555 S.E.2d at 553 (quoting *State v. Syriani*, 333 N.C. 350, 398, 428 S.E.2d 118, 144, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993)) (alterations in original). After close consideration of each statement defendant claims was speculation, we hold that the trial court did not err.

Defendant would have us hold that the prosecutor engaged in speculation when he made three arguments: (i) that Earl Phillips "shielded" his wife; (ii) that Mitzi Phillips was protecting her daughter; and (iii) what the victims felt physically and emotionally during the attack. We have considered each of these statements in detail and determined that the prosecutor did no more than reconstruct the series of events from the perspectives of the victims using defendant's confession and the physical evidence at the scene and from the coroner's report, along with reasonable inferences from these sources. Such arguments will not be held to extend beyond the record.

Defendant also contends that the prosecutor departed from record evidence by stating that Mitzi Phillips' father, Gerald Blazer, was "[a] good man with a broken heart who can't stay in Haywood County at the home that he put here, because Charles Roache destroyed his only daughter. Mr. Gerald Blazer, right there, was unable to take the witness stand and give you victim impact evidence. . . ." Despite defendant's position that this is speculation, one of Eddie and Mitzi Phillips' daughters, Ginger Phillips Boyd, testified that Blazer could not live in his Haywood County home since the

crimes and that he got upset if anyone mentioned Mitzi Phillips' name. The prosecutor's argument did not stray from record evidence and reasonable inferences therefrom.

The prosecutor also stated that defendant had "victimized people numbering in the hundreds." While evidence was not presented which literally supports this statement, the statement is more measured than impermissible speculation. More aptly, this argument was a rhetorical method of reminding the jury that "the victims were sentient beings with close family ties before they were murdered by defendant." *State v. Conaway*, 339 N.C. at 528, 453 S.E.2d at 850. The trial court was not required to intervene *ex mero motu* to prevent the jury from considering this argument.

Defendant also complains that the prosecutor stated that if Eddie and Mitzi Phillips' other "four daughters had been there, the four other daughters, they probably would have been the victims of the mass murderer and atrocity, also." Evidence at trial showed that defendant murdered Earl, Cora, Mitzi, and Katie Phillips because they were witnesses to his murder of Eddie Phillips. Accordingly, a reasonable inference can be drawn from the evidence that, had there been more people present at the scene, defendant might have killed them also.

The prosecutor also made a comment about defendant's "laughing and grinning" during the course of the trial. Defendant contends this comment wandered beyond the scope of the record, but this Court has held that "[a] prosecutor may properly comment on a defendant's demeanor displayed throughout the trial." *State v. Flippen*, 349 N.C. 264, 276, 506 S.E.2d 702, 710 (1998), *cert. denied*, 526 U.S. 1135, 143 L. Ed. 2d 1015 (1999). Thus, the argument was not an impermissible consideration.

Defendant's final claim of speculation comes from the prosecutor's statement that if the adult victims could be at trial, they would ask defendant, "Why Katie? Take us, Charles Roache, but why[] Katie?" The prosecutor, through this argument, was not improperly engaging in speculation outside the record but was using the wide latitude afforded counsel in hotly contested cases, *see e.g.*, *State v. Haselden*, 357 N.C. 1, 19, 577 S.E.2d 594, 606, *cert. denied*, —— U.S. ——, 157 L. Ed. 2d 382 (2003); *State v. Roseboro*, 344 N.C. 364, 376, 474 S.E.2d 314, 320 (1996), to suggest that the murder of fourteen-year-old Katie Phillips was worthy of a death sentence. This argument was not grossly improper.

**[48]** Fifth, defendant contends that the prosecutor impermissibly argued to the jurors the positive impact a death verdict would have on the surviving relatives of the victims and with respect to the jurors' relationships with God. Defendant's argument in the brief about the sentencing recommendation's impact on the family is insufficient to enable this Court to undertake a meaningful review. *See* N.C. R. App. P. 28(a). Defendant does no more than cite the allegedly problematic passages.

> The function of all briefs required . . . by these rules is to define clearly the question presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented in the several briefs.

*Id.* Defendant has waived his right to appellate review of this issue.

**[49]** Defendant argues with regard to the prosecutor's religious reference during closing that this Court has designated religion as a subject inappropriate for closing arguments. Admittedly, some religious statements are discouraged in closing argument. *See, e.g., State v. Williams,* 350 N.C. 1, 25-27, 510 S.E.2d 626, 642-43, *cert. denied,* 528 U.S. 880, 145 L. Ed. 2d 162 (1999). In particular, we have " 'distinguished as improper remarks that state law is divinely inspired . . . or that law officers are 'ordained' by God.' " *State v. Braxton,* 352 N.C. at 217, 531 S.E.2d at 462 (quoting *State v. Artis,* 325 N.C. 278, 331, 384 S.E.2d 470, 500 (1989), *sentence vacated on other grounds,* 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)) (alterations in original). The argument at issue here, however, that each juror would lie in bed and thank the Lord for their own safety, the safety of their family, and for the knowledge he or she did the right thing, is not of the type which we have overturned on previous occasions. We hold that, rather than invoking religious law over secular law, this argument merely urges jurors to make the decision the State viewed as the proper one—recommending a death sentence. Moreover, even if it be assumed *arguendo* that this statement was improper, the prejudice, if any was neutralized by defense counsels' use of religious arguments during their closing, analogizing that jurors should be merciful as Jesus Christ was. *See State v. Daniels,* 337 N.C. 243, 279, 446 S.E.2d 298, 320-21 (1994) (reasoning that the defendant's use of religious arguments to the jury lowered the risk of prejudice from the prosecutor's use of religious arguments), *cert. denied,* 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). The State's argument was not grossly improper.

**[50]** We hold that none of the arguments or lines of reasoning challenged in this assignment of error were so grossly improper as to require the trial court to intervene *ex mero motu*.

To conclude his argument on this point, defendant claims that his trial counsel's failure to object to these alleged errors in the State's closing argument at sentencing and failure to request a mistrial demonstrated ineffective assistance. We decline to so hold. As we have stated repeatedly above, "[c]ounsel is given wide latitude in matters of strategy." *State v. Fletcher*, 354 N.C. at 482, 555 S.E.2d at 551. None of the complained-of statements were sufficiently flagrant to require the court to intervene *ex mero motu*; thus, counsel's failure to object to them or to request a mistrial on their bases is deemed insufficient to overcome this Court's strong presumption that trial counsel's representation is within the boundaries of acceptable professional conduct. *State v. Fisher*, 318 N.C. at 532, 350 S.E.2d at 346. These assignments of error are overruled.

**[51]** Defendant next assigns error to the trial court's refusal to give peremptory instructions for two of the forty-four nonstatutory mitigating circumstances submitted to the jury as to the murder of Mitzi and Katie Phillips. The trial court submitted forty-nine mitigating circumstances consecutively numbered, five of which were statutory and forty-four of which were nonstatutory. Defendant contends that uncontradicted plenary evidence showed that defendant "did not flee Haywood County after this murder," (nonstatutory mitigator number 5) and "displayed remorse for his actions" (nonstatutory mitigator number 46). Defendant argues that this error infected two potentially powerful mitigators and, hence, amounted to constitutional error such that his sentences of death should be reversed. We disagree.

"If the evidence supporting a nonstatutory mitigating circumstance is uncontroverted and manifestly credible, the defendant is entitled to a peremptory instruction on that circumstance upon his request." *State v. Buckner*, 342 N.C. 198, 235, 464 S.E.2d 414, 435 (1995), *cert. denied*, 519 U.S. 828, 136 L. Ed. 2d 47 (1996); *see also State v. Nicholson*, 355 N.C. 1, 56, 558 S.E.2d 109, 146, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002). The evidence defendant contends supports the nonstatutory mitigating circumstance that defendant did not flee after these murders does not meet this standard. Defendant argues that the evidence is uncontradicted that the morning after the murders, defendant was looking for someone to whom he could surrender and wanted to turn himself in; that he voluntarily

surrendered; and that he did not run. However, the evidence at trial tended to show that Lippard and defendant drove from Earl Lane onto I-40, where Lippard wrecked the car they had stolen. At that point defendant left the wrecked automobile and hid approximately a mile away under a camper top, where he did not reveal himself until he was found by the owner of the land, Jim Fowler. Fowler threatened to kill defendant if he made a move and held defendant at gunpoint until the police arrived to arrest him. Thus, the evidence presented at trial permits the inference that defendant intended to flee Haywood County upon leaving the scene of the crime. Accordingly, the evidence supporting the nonstatutory mitigating circumstance that defendant "did not flee Haywood County" did not warrant a peremptory instruction.

Neither did the trial court err by refusing to give a peremptory instruction on the nonstatutory mitigating circumstance that defendant "had displayed remorse for his actions." Defendant's evidence showing remorse is indirect and tenuous. No witness testified expressly that defendant was remorseful or sorry for the crimes he committed. Evidence that defendant was "tormented" or thought the victims' families "need justice" is subject to more than one interpretation. Defendant not having presented evidence which definitively established remorse by defendant for his actions, a peremptory instruction was not mandated. This assignment of error is overruled as to both mitigating circumstances number 5 and number 46.

[52] Defendant next contends that the trial court committed plain error by failing to give peremptory instructions on the statutory mitigating circumstance that the murders were committed while defendant was under the influence of a mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2), and the statutory mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct was impaired, N.C.G.S. § 15A-2000(f)(6). Defendant argues that this failure prevented the jury from giving this evidence the full mitigating value it required and resulted in constitutional error. Additionally, defendant suggests that counsel's failure to request peremptory instructions constituted ineffective assistance.

As defendant acknowledges, counsel did not specifically request peremptory instructions on these mitigating circumstances. " 'In order to be entitled to [a peremptory] instruction defendant must timely request it.' " *State v. Gregory*, 340 N.C. at 415, 459 S.E.2d at 667 (quoting *State v. Johnson*, 298 N.C. 47, 77, 257 S.E.2d 597, 619 (1979),

*overruled in part on other grounds by State v. Williams,* 339 N.C. 1, 452 S.E.2d 245 (1994)) (alterations in original). Nonetheless, the only evidence to which defendant directs our attention as support for these mitigators came from Dr. Coleman, who testified that she had been hired by defendant in preparation for this trial. This Court has held previously in *State v. Richmond,* 347 N.C. 412, 495 S.E.2d 677, *cert. denied,* 525 U.S. 843, 142 L. Ed. 2d 88 (1998), that a trial court's failure to give a peremptory instruction relating to a defendant's mental illness was not error where the evidence supporting the instruction came from a mental health professional evaluating the defendant in preparation for trial. *Id.* at 440, 495 S.E.2d at 693. As we stated in *Richmond,* "[T]his evidence lacks sufficient indicia of reliability to permit the conclusion that it is manifestly credible." *Id.* Following this precedent, we hold that the trial court in this case was not obligated to give a peremptory instruction on these mitigators. Moreover, defense counsel did not provide ineffective assistance by failing to request such instructions. This assignment of error is without merit.

**[53]** In his next assignment of error, defendant contends that the trial court committed plain error by failing to instruct the jury that it could not use the same evidence to support multiple aggravating circumstances. Defendant additionally claims that the error violated his constitutional rights and that his counsel's failure to request an instruction constituted ineffective assistance. We reject these claims.

The trial court submitted four aggravating circumstances for the murders of Mitzi and Katie Phillips, the only crimes for which defendant received the death penalty: (i) the murders were committed to avoid or prevent a lawful arrest, N.C.G.S. § 15A-2000(e)(4); (ii) the murders were committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6); (iii) the murders were especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (iv) the murders were part of a course of conduct in which the defendant engaged and included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11). Defendant contends that, absent an instruction, the jury could have used the same evidence to support more than one aggravating factor. "Where . . . there is separate evidence supporting each aggravating circumstance, the trial court may submit both 'even though the evidence supporting each may overlap.' " *State v. Rouse,* 339 N.C. at 97, 451 S.E.2d at 564 (quoting *State v. Gay,* 334 N.C. 467, 495, 434 S.E.2d 840, 856 (1993)). However, we have held that a defendant must request that the trial court so instruct: " 'When the court perceives a

possible overlap of evidence supporting more than one aggravating circumstance *and* when the court is requested to instruct the jury that the same evidence cannot be used as a basis for finding more than one aggravating circumstance, it should do so.'" *State v. Holmes*, 355 N.C. 719, 740, 565 S.E.2d 154, 169 (2002) (quoting *State v. Smith*, 352 N.C. at 565, 532 S.E.2d at 795). Defendant in the instant case failed to make any request for this instruction. This Court has previously held that a defendant did not make a proper request for the same instruction where the request was not made in writing. *State v. Holmes*, 355 N.C. at 741, 565 S.E.2d at 169. Nevertheless, assuming *arguendo*, that failure to give the instruction was error, after careful review, we conclude that defendant has failed to demonstrate that absent the omission in the instructions, the jury probably would have returned a different verdict. The jury found all of the aggravators except for the pecuniary gain factor. The other three aggravators each are supported by different evidence. Thus, the jury would not have used the same evidence to find each of them.

Defendant did not raise his constitutional claims at trial. Accordingly, they have not been preserved for appellate review. *State v. Call*, 349 N.C. at 410, 508 S.E.2d at 519; *see* N.C. R. App. P. 10(b)(1). Defendant also contends that his counsel's failure to request the instruction demonstrates ineffective assistance. This contention is meritless. Defendant has failed to show prejudice; therefore, this assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises sixteen additional issues that he concedes have previously been decided contrary to his position by this Court: (i) whether the short-form indictment was adequate to confer jurisdiction on the trial court to try defendant for first-degree murder; (ii) whether the trial court erred by denying defendant's motion to prohibit death qualification of the jury; (iii) whether the death penalty is unconstitutional as currently imposed under North Carolina law; (iv) whether the trial court erred by denying defendant's motion to prohibit a death sentence based on international law; (v) whether the trial court erred by failing to prevent the State from exercising peremptory challenges against venire-members not properly excludable under *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, and *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841, but who expressed reservations about the death penalty; (vi) whether the trial court erred by denying defendant's request to *voir dire* potential jurors on their conception of parole eligibility; (vii) whether the trial court

erred by refusing to bar the State from changing its theory on who committed the murders of Earl and Cora Phillips at defendant's trial; (viii) whether the aggravating circumstance that these crimes were especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9) (2003), is unconstitutionally vague and overbroad; (ix) whether the trial court erred by denying defendant's request for an instruction telling the jury that it could consider any sympathy or mercy for defendant that arose from the evidence; (x) whether the trial court erred by denying defendant's request for an instruction informing the jury that if it could not agree on a unanimous verdict within a reasonable time that a sentence of life imprisonment would be imposed; (xi) whether the trial court erred by instructing jurors they "may" consider mitigating circumstances; (xii) whether the trial court erred by denying defendant's request to modify the Pattern Jury Instructions to eliminate the language "taken as a whole must satisfy you," from the instruction on the burden of proof for mitigating circumstances; (xiii) whether the trial court erred by instructing the jury that it was to determine whether nonstatutory mitigating circumstances had mitigating value; (xiv) whether the trial court erred by instructing the jury a mitigating circumstance must "extenuate" or "reduce" the "moral culpability" of the homicide; (xv) whether the trial court erred by instructing jurors that they had to be unanimous in order to impose a sentence of life imprisonment; and (xvi) whether the trial court erred by instructing the jury that it had a "duty" to find that the mitigating circumstances were insufficient to outweigh the aggravating circumstances and a "duty" to find that the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings and to preserve them for federal review. We have considered defendant's arguments on these issues and conclude that defendant has demonstrated no compelling reason to depart from our prior holdings. We thus overrule these assignments of error.

## PROPORTIONALITY

[54] Finally, this Court exclusively has the statutory duty in capital cases, pursuant to N.C.G.S. § 15A-2000(d)(2), to review the record and determine: (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether

the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *State v. McCollum*, 334 N.C. at 239, 433 S.E.2d at 161.

After a thorough review of the transcript, record on appeal, briefs, and oral arguments of counsel, we conclude that the jury's finding of the three distinct aggravating circumstances submitted was supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentences were imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *State v. Robinson*, 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. at 164-65, 362 S.E.2d at 537 (1987). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). Our consideration is limited to those cases that are roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *State v. Syriani*, 333 N.C. at 400, 428 S.E.2d at 146. Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994).

In the case at bar, defendant was convicted of five first-degree murders—three on the basis of premeditation and deliberation and under the felony murder rule and two solely under the felony murder rule. As to the murders of Mitzi Phillips and Katie Phillips, for each of which defendant received a sentence of death, the jury found three of the four aggravating circumstances submitted: (i) that the capital felonies were committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4); (ii) that the murders were especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (iii) that the murders were part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons,

N.C.G.S. § 15A-2000(e)(11). A fourth aggravating circumstance was submitted to but not found by the jury: that the capital felonies were committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6).

The trial court submitted five statutory mitigating circumstances for the jury's consideration; namely, (i) the capital felonies were committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (ii) defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6); (iii) defendant's age at the time of the crime, N.C.G.S. § 15A-2000(f)(7); (iv) defendant aided in the apprehension of another capital felon, N.C.G.S. § 15A-2000(f)(8); and (v) the catchall mitigating circumstance that there existed any other circumstance arising from the evidence which the jury deemed to have mitigating value, N.C.G.S. § 15A-2000(f)(9). The jury found the (f)(2), (f)(6), and (f)(8) mitigating circumstances to exist. The trial court also submitted forty-four nonstatutory mitigating circumstances; the jury found thirty-five of these circumstances to exist.

In our proportionality analysis we compare this case to those cases in which this Court has determined the sentence of death to be disproportionate. This Court has determined the death sentence to be disproportionate on eight occasions. *State v. Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870 (2002); *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is not substantially similar to any of the cases in which this Court has found that the death sentence was disproportionate.

We also consider cases in which this Court has found the death penalty to be proportionate. Defendant in this case killed one victim and then killed four other victims in an attempt to rid the scene of witnesses. He invaded the home of two of the victims and killed five people from three generations of one family. "A murder in the home 'shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure.' " *State v. Adams*, 347 N.C. 48, 77,

490 S.E.2d 220, 236 (1997) (quoting *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 407 (1987)) (alterations in original), *cert. denied*, 522 U.S. 1096, 139 L. Ed. 2d 878 (1998); *accord State v. Nicholson*, 355 N.C. at 72, 558 S.E.2d at 155. As to these two murders, defendant was convicted based on premeditation and deliberation and under the felony murder rule. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. at 341, 384 S.E.2d at 506. Furthermore, this Court has deemed the (e)(9) and (e)(11) aggravating circumstances, standing alone, to be sufficient to sustain a sentence of death. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). Viewed in this light, the present case is more analogous to cases in which we have found the sentence of death proportionate than to those cases in which we have found the sentence disproportionate or to those cases in which juries have consistently returned recommendations of life imprisonment.

Defendant received a fair trial and capital sentencing proceeding, free from prejudicial error; and the death sentences in this case are not disproportionate. Accordingly, the judgments of the trial court are left undisturbed.

NO ERROR.